BECKMAN BROS., INC., Respondent, *v.* WEIR et al.,
Appellants.

No. 8722

Submitted May 22, 1947. Decided July 1, 1947.

184 Pac. (2d) 347

Mr. H. R. Eickemeyer, Mr. Daniel C. Dempsey, Mr. Truman G. Bradford, County Atty., and Mr. William H. Swanberg, all of Great Falls, for appellants.

Mr. H. B. Hoffman, Mr. L. W. Paul and Mr. Orin R. Cure, all of Great Falls, for respondent.

MR. CHIEF JUSTICE ADAIR delivered the opinion of the Court.

This is an appeal from a judgment.

The Facts. Beckman Bros. Inc., a corporation, was the owner of the fee to the south 50 feet of the north 100 feet of Lots 1 and 2 in Block 504 of the Town or Townsite of Great Falls, Cascade county, Montana. The owner failed to pay the taxes and the property was sold to Cascade county for the delinquent taxes for the year 1936. There was no assignment of the certificate of tax sale and no redemption from such sale.

On December 12, 1941, a tax deed was duly executed and delivered conveying the property to Cascade county for $50.95 being the amount of delinquent taxes thereon for 1936 together with subsequent taxes for the years 1937, 1938, 1939, 1940 and 1941. The board of county commissioners appraised the property at $1,000 and, within six months after receiving the tax deed therefor, made an order for the sale of the property at public sale fixing and advertising January 27, 1942, as the date for such sale.

Notice of such sale was duly posted in three public places in Cascade county and published in a newspaper printed in said county once a week for three consecutive weeks more than 30 days before the date so fixed for the sale. Neither prior to nor at the date fixed for such sale, did Beckman Bros. Inc. nor any one claiming to be its successor in interest to said property offer to purchase the property from the county. No offers to purchase being made by any one, there was no sale of the property and title and possession thereof continued and continues in Cascade County.

On December 7, 1944, Beckman Bros. Inc., claiming the pref-

erential right to purchase the property from the county for the amount of taxes, penalties and interest due, tendered the sum of $50.95 and demanded that Cascade county deliver to it a deed conveying title of the property. Such offer to purchase not having been made "*before* the date fixed for such sale" as required by Chapter 171, Laws 1941, nor until almost three years *after* the date fixed for such sale, the county and its officers refused the offer and declined to convey the property to such former owner. Thereafter on March 14, 1945, the petitioner, Beckman Bros. Inc., commenced this proceeding in mandamus, in the district court of Cascade county, to compel the respondents, Cascade county, its clerk and recorder and board of county commissioners, to accept the offer and convey the property to petitioner.

The cause was tried in the district court upon an agreed statement of facts and decree rendered for petitioner ordering the respondent county and its officers to execute a quitclaim deed to the property and awarding petitioner attorneys' fees of $250 together with costs of suit. From such decree respondents have appealed.

Right of Redemption. The law gives to the owner of real ▇ property sold for delinquent taxes the right of redemption *until* the notice provided for in section 2209, Revised Codes, has been given and the tax deed applied for, upon the payment of fees, percentages, penalties and costs required by law. To enjoy this right the delinquent taxpayer must exercise same *before* tax deed is taken to the property. If not exercised in the manner and *within the time* provided by statute the right becomes lost. See section 2201, Revised Codes, as amended by Chapter 39, Laws 1941, and sections 2209 and 2209.1, Revised Codes.

Beckman Bros. Inc. did not exercise its right of redemption *before* the issuance of the tax deed to Cascade County on December 12, 1941. The time for asserting such statutory right thus expired and the right of redemption was lost.

Preferential Right to Purchase. In addition to the right to re-

308

■ ■ deem the property *before* the issuance of tax deed the law gives to the former owner the preferential right to purchase the property from the county *after* the issuance of tax deed by complying with the provisions of section 2235, Revised Codes, as amended by subsequent legislative enactments. The purchase of tax acquired property from the county by the former owner is not a "redemption" (Blackford v. Judith Basin County, 109 Mont. 578, 98 Pac. (2d) 872, 126 A. L. R. 639) and should not be confused with a redemption. The preferential right to purchase from the county for only the amount of the taxes, penalties and interest due is purely statutory and, if claimed, must be exercised in the manner and *within the time* provided by statute or the right becomes lost.

In Chapter 171, Laws of 1941, the legislature expressly provided, "that at any time *before the date fixed for such sale,* notice of which has been given as above provided, the taxpayer or successor in interest whose property has been deeded to the county may purchase such property subject to the reservations hereinafter provided by payment to the county of the full amount of the taxes, penalties, and interest due on said land at the time of taking said tax deed * * *." (Emphasis ours.) To protect preserve and enjoy the preferential right to purchase the land from the county on the favorable terms authorized by the Act, the former owner must comply with the provisions of the Act. He must make the offer to purchase and claim the preferential right therein given him "before the date fixed for such sale."

The particular statute under which Beckman Bros. Inc. as former owner of the property involved must claim its preferential right to purchase from the county at a much lower figure than other prospective purchasers is Chapter 171, Laws 1941, supra, in force and effect from March 19, 1941 to February 28, 1945, and being the law of this state on December 12, 1941 (the date Cascade county acquired tax deed to the property), on January 27, 1942 (the date fixed and advertised by the board of county commissioners for the sale of the property) and on

December 7, 1944 (the date Beckman Bros. Inc. made its tender and demand for deed).

Beckman Bros. Inc. did not exercise its preferential right to purchase the property from the county for the reduced amount permitted by statute *before* the time fixed by the board of county commissioners for the sale of the property on January 27, 1942. While the legislature provided in the 1941 Act that the former owner could claim his preferential right and offer to purchase from the county ''at any time *before* the date fixed for such sale,'' yet this does not mean that such owner may delay making its offer to purchase and claiming its preferential right until almost three years *after* the date fixed for such sale and then, at such late date, make the offer, assert the right and demand the benefits of a statute with which it has not complied. On December 7, 1944, when petitioner made its tender and demand, the time for asserting its statutory preferential right to purchase the property at the reduced figure contemplated by the statute had long since expired and the right had become lost.

By failing to comply with the requirements of Chapter 171, Laws 1941, the petitioner lost the preferential right to purchase at the favorable figure provided by such Act and respondents properly refused petitioner's offer and declined to execute the deed demanded. Hence the judgment must be reversed and the action ordered dismissed.

Garfield County Case. In State ex rel. Johnson v. Garfield County, 116 Mont. 300, 151 Pac. (2d) 481, decided September 7, 1944, *the facts* found by the trial court and restated in the opinion of this court show that the former owner Johnson complied with the provisions of Chapter 171, Laws 1941, by appearing before the board of county commissioners *before* the time set for the sale claiming his preferential right to purchase the land as the prior owner thereof and offering to pay the amount of the delinquent taxes, penalties and interest due thereon.

Because *the facts* showed that Johnson, the former owner, had complied with the provisions of Chapter 171, Laws 1941, *within*

*the time* therein specified, the district court of Garfield county and this court on appeal recognized, protected and preserved such former owner's preferential right to purchase the property from the county at the reduced price set in the Act as against the much higher offer of another bidder. This court's opinion in the Garfield County case, supra, sets forth *the facts* therein as follows:

"The facts as found by the court are as follows: January 31, 1941, the plaintiff was the owner of the section of land involved in the action; on the date mentioned the county took a tax deed to the land; the county board appraised the land pursuant to the statute, gave notice of intention to sell, and offered the same for sale March 10, 1941; no bid was received. April 8, 1941, the board leased the land to the plaintiff for one year; April 2, 1942, it was again leased to the plaintiff for one year subject to sale; the rental agreed on was paid by the plaintiff.

"September 9, 1942, the county board again appraised the land pursuant to Chapter 171 of the Laws of the 1941 session, and ordered the land sold at public auction; November 2, 1942, the time set for the sale, the plaintiff appeared before the county board before the hour of sale claiming his preferential right to purchase the land as the prior owner thereof, and offered to pay the amount of the delinquent taxes, penalty and interest in the sum of $251.21, which offer the county board refused, and subsequently but on the same day sold the land to the defendant Brooks for $800 on a contract providing for payment of the purchase price on terms. As matter of law the court concluded that the plaintiff had a preferential right to purchase under the provisions of Chapter 171, and that it was the 'mandatory duty' of the county and its board to sell the land to the plaintiff for the amount due for the delinquent taxes in the sum heretofore mentioned and that the plaintiff was entitled to a judgment to that effect, and declared the contract with Brooks void. Judgment was made and entered accordingly and a peremptory writ

of mandamus was ordered issued requiring compliance by the county board with the decree."

Under *the facts* above, the judgment of the district court of Garfield county, recognizing and enforcing the former owner's preferential right to purchase under the provisions of Chapter 171, Laws 1941, was correct as is the decision of this court upholding and affirming such judgment.

The Garfield County case, supra, correctly states that the former owner's preferential right to purchase from the county for the amount of the taxes, penalties and interest due on the land "was first provided for by Chapter 33 of the Extraordinary Session of 1933-34 by an amendment to section 2235, Revised Codes 1921."

In 1939, the legislature further amended section 2235, Revised Codes of 1921, by the enactment of Chapter 181, Laws 1939. Both the 1934 Act and the 1939 Act provided, "that at any time *before such sale,* the taxpayer whose property has been deeded to the county may purchase such property by payment to the county of the full amount of the taxes, penalties and interest for which such property was sold. * * *." (Emphasis ours.)

In 1941, the legislature, by Chapter 171, Laws 1941, enacted a *new law* relating to the sale and lease by county commissioners of unredeemed tax title property which expressly repealed "Chapter 181, Laws of 1939, Chapter 193, Laws of 1939, and All Other Acts and Parts of Acts in Conflict Herewith."

The *new law* (1941) no longer gave the former owner the preferential right to purchase from the county "at any time before such sale" as was provided for in the 1934 and 1939 Acts, but instead it limited the time within which the former owner could exercise his preferential right to purchase for only the amount of the taxes, penalties and interest due to "at any time before the date fixed for such sale."

The 1939 Act, supplanting the 1934 Act, having been expressly repealed by the 1941 Act, became a dead letter on March 19, 1941, and it therefore follows that neither the 1934 Act nor the

1939 Act is applicable to the instant case. However, had such Acts not been repealed and were they applicable to the case at bar the phrase "at any time before such sale" employed in such Acts would 'limit the former owner's preferential right to purchase from the county at the reduced amount to any time before the county actually sells the property. In the instant case that time is not yet ascertainable for to date there has been no sale of the property by the county.

° On the other hand the phrase "at any time before the date fixed for such sale" employed in Chapter 171, Laws 1941, means, in the case at bar, a specific and definite date, namely, January 27, 1942, which was the date fixed by the board of county commissioners for the sale of the property at public auction. That specific date and time has long since passed.

Certain inaccurate statements appear at page 304 of the opinion in the Garfield County case, supra, 116 Mont. 300, at page 304, 151 Pac. (2d) 481, at page 482. It is inaccurate to state that the wording of the 1939 Act and the 1941 Act "is substantially the same" or that both Acts "give the owner the preferential right to pay the delinquent taxes with interest and penalty and reclaim his land at any time *before sale* by the county" or that, "At no time since its enactment in 1933 could any person be deprived of his right to reclaim his land by paying the amount of delinquent taxes with penalty and interest prior to the time of sale as advertised by the board of county commissioners." This court's determination of the appeal affirming the judgment of the district court in the Garfield County case is a correct result and determination under *the facts* and *the law* (Chapter 171, Laws 1941) of that case and the above quoted statements from page 304 of this court's opinion in 116 Mont., 151 Pac. (2d) 481, therein are disapproved as they are not at all essential to the opinion nor are they binding as a precedent. See State ex rel. McMaster v. District Court, 80 Mont. 228, at pages 235, 236, 260 Pac. 134, at page 137.

"If a court renders a *correct* judgment based upon a wrong

theory or gives incorrect reasons for the ruling the *correct* judgment will stand." State v. Iola Theater Corporation, 136 Kan. 411, 15 Pac. (2d) 459, 461. See also: State ex rel. McMasters v. District Court, supra; Tax Commission Case (Martien v. Porter), 68 Mont. 450, at page 468, 219 Pac. 817; Boulden v. Thompson, 21 Cal. App. 279, 131 Pac. 765; Gilmour v. Longmire, 10 Wash. (2d) 511, 117 Pac. (2d) 187, 21 C. J. S., Courts, sec. 190, p. 312 note 69; 14 Am. Jur. p. 291, sec. 79 at p. 291 and sec. 83 at p. 295.

As was said by this court in Sun River Stock & Land Co. v. Montana Trust & Savings Bank, 81 Mont. 222, at pages 243 and 244, 262 Pac. 1039, at page 1047: "There are some statements in Scott v. Prescott, 69 Mont. 540, 223 Pac. 490, which, if not considered with reference to the facts with which the court was dealing in that case, are misleading. In considering the meaning and intent of the language of an opinion one must have constantly in mind the facts of the case in which the opinion is written. For, as Chief Justice Marshall observed, it is impossible so to use language as that general expressions apply in every instance with the same meaning to every condition of facts. See Chater v. San Francisco Sugar Refining Co., 19 Cal. [219], 220. * * * As the facts in Scott v. Prescott differ so widely from those in the cases under consideration, the opinion in that case has but little bearing upon the controlling question before us." To same effect see: Forbes v. Mid-Northern Oil Co., 100 Mont. 10, at page 18, 45 Pac. (2d) 673; Gaines v. Van Demark, 106 Mont. 1, at page 9, 74 Pac. (2d) 454.

In the Garfield County case, the county advertised the land for sale for March 10, 1941, on which date the law then in force was Chapter 181, Laws 1939, under which the former owner could protect his preferential right to purchase the property from the county at any time before the county actually sold the land to some other party the statute then providing that such right may be exercised "at any time before such sale." There being no bidders and no sale the former owner's preferential right to

purchase under the 1939 Act continued wholly unaffected by the unsuccessful attempt to sell the property on March 10, 1941. Nine days later, to wit, on March 19, 1941, the 1939 Act was expressly repealed and a new law Chapter 171, Laws 1941, went into effect changing the time limit for asserting the former owner's preferential right to purchase at a reduced amount by limiting the exercise of such right to "any time before the date fixed for such sale" so that when the county thereafter advertised the land for sale at public auction for November 2, 1942, the former owner was required to comply with the new law, Chapter 171, Laws 1941, by claiming his preferential right and making his offer to purchase *before the time fixed for the sale,* all of which things the former owner, Johnson, did in the Garfield County case and none of which was done by the petitioner, as former owner, in the case at bar. Thus are *the facts* of the Garfield County case so different from *the facts* of the instant case that it cannot be reasonably said that petitioner relied upon the opinion in the former case as authority for not complying with the statute and for not claiming its preferential right and submitting its offer to purchase the property from the county before the time fixed and set for said sale as is expressly required by Chapter 171, Laws 1941. In the instant case there are no contract rights existing in favor of the petitioner and decisions relating to the impairment of contract rights created under an erroneous court decision relied upon by a party to his injury have no application. See Blackford v. Judith Basin County, supra, and Pace v. Wight, 25 N. M. 276, 181 Pac. 430, at page 434.

In the Garfield County case the former owner, Johnson, was entitled to prevail because he complied with the law while, in the instant case, the petitioner, as former owner, is *not* entitled to prevail because it did *not* comply with the law creating the right.

The judgment is reversed and the cause remanded to the district court with directions to dismiss the action.

Associate Justices Choate, and Metcalf concur.

Mr. Justice Cheadle:

I concur in the result of the majority opinion, in the belief that respondent is not prejudiced by a refusal to apply the language used in the decision in Johnson v. Garfield County, so as to bring it within the protection of the rule anounced by the cases cited in the dissent. Montana Horse Products Co. v. Great Northern Ry. Co.; Continental Supply Co. v. Abell.

Mr. Justice Angstman (dissenting).

I agree that under Chapter 171, Laws 1941, the original owner of property must exercise his right of repurchase at the reduced price before the time fixed for the first offering of sale by the county.

My principal objection to the majority opinion hinges upon its consideration of the case of State ex rel. Johnson v. Garfield County, 116 Mont. 300, 151 Pac. (2d) 481, 482. In that case this court held that under Chapter 171 the purchaser could exercise his right of repurchase at the reduced price at any time before a sale by the county. In that case this court said: "The contention of the county board is in effect that the tax deed to the county having been made and delivered January 31, 1941, and the land having once been appraised, advertised and offered for sale under the provisions of Chapter 181 of the 1939 Session Laws, but not sold, the 1939 Session Laws being in effect at the time the county acquired title to the land, and the land being offered once for sale and not sold, the plaintiff's preferential right was by such procedure lost. To sustain such contention it is argued that the phrase 'such sale' in Chapter 171 'contemplated the first offering for sale at public auction after the county acquired tax deed to the lands * * *' and as the sale was not made at the first but the second offering the preferential right of the owner had lapsed.

"No reasonable construction of Chapter 171 will sustain any such contention. The preferential right of the owner of the land sold for delinquent taxes is fully protected by both the 1939 Act

and also by the 1941 Act. The wording of both Acts is substantially the same as to the preferential right to redeem. *Both clearly give the owner the preferential right to pay the delinquent taxes with interest and penalty and reclaim his land at any time before sale by the county."* (Italics mine.)

I think the decision in the Johnson case is erroneous to the extent that it holds that under Chapter 171, Laws 1941, the original owner may repurchase the property by paying the taxes, penalty and interest at any time before sale and this my associates concede. I think the correct conclusion was reached in the Johnson case under the facts there involved because that case was controlled by Chapter 181, Laws of 1939, which was the law in effect when the county became the purchaser at the tax sale. State ex rel. City of Billings v. Osten, 91 Mont. 76, 5 Pac. (2d) 562.

My associates, in reliance upon certain language appearing in the wholly different case of State ex rel. McMaster v. District Court, 80 Mont. 228, 260 Pac. 134, seem to regard the holding in the Johnson case to the effect that the original owner could repurchase at the reduced price at any time before sale by the county as dictum and matter placed in the opinion by way of argument, that it is not essential to the opinion and is not a binding precedent. ''That which is within the issue, fully argued by counsel and deliberately considered by the court in its opinion, is not dictum. Helena Power Transmission Co. v. Spratt, 37 Mont. 60, 94 Pac. 631; Montana Horse Products Co. v. Great Northern R. Co., 91 Mont. 194, 7 Pac. (2d) 919; First Nat. Bank of Kalispell v. Perrine, 97 Mont. 262, 33 Pac. (2d) 997. Nor does the decision lose its value as a precedent because the case might have been decided on some other ground. 21 C. J. S., Courts, sec. 190, p. 314 et seq., 14 Am. Jur., Courts, Sec. 83, pp. 297, 298.'' Bottomly v. Ford, Mont., 157 Pac. (2d) 108, 112.

In addition to what is quoted above from the opinion in the Johnson case, the court after reviewing the legislation on the subject in question also said: ''At no time since its enactment

in 1933 could any person be deprived of his right to reclaim his land by paying the amount of delinquent taxes with penalty and interest prior to the time of sale as advertised by the board of county commissioners. We think this is so clearly the intent of the original Act and each subsequent amendment and re-enactment of the law that we deem it unnecessary to consider any of the other contentions of the defendants.''

The language of the court in the Johnson case construing Chapter 171 as authorizing repurchase at the reduced price at any time before sale of the property was not merely argument used by the Justice who wrote the opinion or argument of the court as a whole. It was the sole basis of the court's opinion. The opinion went further and expressly excluded other questions which might have called for the same result. It was the only reason given for the conclusion and cannot now be regarded as dictum or unessential to the opinion or as lacking in its quality as a precedent. Either that language or some other was essential to the opinion to decide the point before the court. There is nothing else in the opinion in the Johnson case that decides the point except the language above quoted. Hence it seems to me the declaration at this late day that that language was not essential to the opinion comes too late. It was regarded as essential when written because the court expressly declined to discuss other questions that might have determined the case on some other ground.

My associates also rely upon the rule that a correct judgment, based upon a wrong reason will be permitted to stand. That is a correct rule as applied to district court judgments reviewed on appeal. This court will not disturb a correct district court judgment based upon a wrong theory or reason. It does not follow, however, that the erroneous decisions of this court are not to be taken as precedents because the case might have been decided the same way on a different and correct theory or reason. Lawyers, litigants and trial judges properly take the decision of this court as precedents whether they agree with them or not. No

decision of this court is a *binding* precedent if this court sees fit to disregard it as such. I think though that this court should accept its decision on a certain point as a binding precedent. To do otherwise is like changing the rules after the ball game is well under way. A disregard of precedent serves to make one rule for A and a different one for B. If the Johnson case was not to be a preecdent then a declaration to that effect might have been proper at the time it was rendered but such a declaration made now should not be permitted to operate retroactively.

I think we should apply the rule in this case which was applied in Montana Horse Products Co. v. Great Northern Railway Co., 91 Mont. 194, 215, 7 Pac. (2d) 919, 927, where this court said ''The construction given to a statute although erroneous, before its reversal or modification, becomes a part of it as much as though written into it; and the change made in construction will affect only contracts made thereafter,'' citing a long list of cases in support of the statement.

The court, continuing in that case, said: ''In Lewis' Sutherland on Statutory Construction, the rule is thus stated: 'A judicial construction of a statute becomes a part of it, and as to rights which accrue afterwards it should be adhered to for the protection of these rights. To divest them by a change of construction is to legislate retroactively. The constitutional barrier to legislation impairing the obligation of contracts applies also to decisions altering the law as previously expounded, so as to affect the obligations of existing contracts made on the faith of the earlier adjudications.' Section 485.''

The same rule was applied in Sunburst Oil & Ref. Co. v. Great Northern Ry. Co., 91 Mont. 216, 7 Pac. (2d) 927.

In Continental Supply Co. v. Abell, 95 Mont. 148, 171, 24 Pac. (2d) 133, 140, this court on motion for rehearing said: ''The rule that a judicial interpretation of a statute becomes a part of the statute itself, so far as contract and property rights are concerned, and that changes in judicial interpretation should not be given retroactive effect, has received judicial sanction by

many courts. [Citing cases.] * * * And it has been held to apply as well to questions of procedure affecting property rights [citing cases] * * *. 'A change in the judicial view of the law by a subsequent decision could not amount to more than a change in the law by legislation,' and, of course, could act prospectively only. [Citing cases.]

"It is unnecessary that it be shown that reliance was actually placed by defendants upon the former decisions. Reliance thereon will be presumed. Bank of Philadelphia v. Posey, 130 Miss. 825, 95 So. 134."

I concede that there was no impairment of contract rights here but the rule applies also to procedure affecting property rights and the facts here show that we are now changing the procedure in a matter affecting property rights. Hence it is my view that though the Johnson case be overruled in part plaintiff was entitled to rely upon it and rest upon the assurance that he could purchase the property at any time before sale by the county by paying the taxes, interest and penalty.

I think the judgment should be affirmed.

Rehearing denied September 25, 1947.