STATE OF MONTANA, ex rel. JOHNSTON E. MORGAN, Relator and Respondent, v. INDUSTRIAL ACCIDENT BOARD of the State of Montana, Appellant.

No. 9629.

Submitted April 26, 1956. Decided August 20, 1956.

301 Pac. (2d) 954.

Mr. Ralph J. Anderson, Mr. Stanley P. Sorenson, Helena, for appellant.

Mr. Joseph M. Goldman and Mr. Lee A. Jordan, Missoula, for respondent.

Mr. Anderson and Mr. Jordan argued orally.

MR. JUSTICE BOTTOMLY:

Proceeding under Workmen's Compensation Act, R.C.M. 1947, section 92-101 et seq., by Johnston E. Morgan, claimant. Opposed by the Industrial Accident Board. Appeal by the Industrial Accident Board from an order and decree in favor of claimant and relator, Morgan.

Relator, Johnston E. Morgan, is now and has been a resident of Missoula, Missoula County, Montana, for some 18 years where he lives with his wife and child.

The Union Construction Company is a corporation, incorporated under the laws of Montana, with its only place of business and office in the City of Missoula, Montana. The corporation is authorized to engage in general construction business of

every nature including construction work upon highways and roads both within and without the State of Montana.

Relator was employed on or about May 18, 1955, by the Union Construction Company, a corporation, at Missoula, Montana, and worked for said company to the 8th day of July, 1955; all of said work was performed within the boundaries of the State of Montana; relator laid off until August 15, 1955, on account of soreness of his back; relator returned to work for said corporation on August 15,1955, and was assigned by said corporation to the job of tending the corporation's rock crusher used in road building operations on a road being constructed by said corporation for the Diamond Match Company which has its plant and mill located in Mineral County, Montana.

While engaged in his usually assigned work on this road construction, and being at that particular time across the line in the State of Idaho, and while clearing the rock crusher of a piece of wood, relator's sleeve was caught by a splice in the conveyor belt, resulting in the injury to relator's right side, back, neck, shoulder and the loss of his right arm.

The record discloses that during said employment relator left each morning for work from Montana and returned each evening after work to Montana; that relator was paid for his work for the Union Construction Company by said company checks, which checks were drawn on a Montana bank; that after the accident relator was removed to St. Patrick's Hospital in Missoula and was there attended by doctors of the Western Clinic of Missoula, Montana.

Notice of the accident was had by the employer the day of its occurrence as relator's boss was right there at the time of the accident.

On or about September 8, 1955, relator presented his verified claim for compensation to the Industrial Accident Board, Sam W. Mitchell Building, Helena, Montana. September 28, 1955, the Industrial Accident Board of the State of Montana, by Mr. Robert F. Swanberg, Chairman, rejected relator's claim stating in part, "* * * we shall not assume any jurisdiction what-

276

soever in this matter, nor shall we make any formal Orders to take any action unless we are compelled by the courts to do so." At the same time the Board returned relator's claim to his attorneys.

Thereafter relator filed his petition for an alternative writ of mandate in the court below; writ was issued and served, answer and return made, and hearing had, and the matter submitted to the court. Neither party requested or proposed findings of fact or conclusions of law, nor did either party waive findings. Briefs were filed and examined and the court then made and filed its findings of fact and conclusions of law. Neither party took or made any exceptions thereto in the court below. The court then made and entered judgment, ordering and adjudging that a writ of mandate issue, commanding the Industrial Accident Board of the State of Montana to immediately assume jurisdiction in the said workman's compensation claim of the relator, Johnston E. Morgan, and that said Industrial Accident Board proceed with due diligence to either commence payment of workmen's compensation to relator or, in the alternative, that said Board afford the relator a hearing in accordance with the provisions of the Workmen's Compensation Act of the State of Montana. From this judgment the Industrial Accident Board has appealed.

The facts as above stated are simple and are not materially contested. The Board contends that since the accident and resulting injury occurred outside the State of Montana and within the borders of Idaho it has no jurisdiction thereof; that the employer was covered by insurance in Idaho and that the injured workman should seek relief under the compensation law of Idaho.

Our Workmen's Compensation Law was enacted for the pro-
[1] of the workman as well as the employer. The Act implies that the first duty of the Industrial Accident Board is to administer it so as to give the employee the greatest possible protection consistent with the purpose of the Act. Compare Miller v. Aetna Life Ins. Co., 101 Mont. 212, 220, 53 Pac. (2d)

704. It is the theory of our Workmen's Compensation Law that loss occasioned by injury to a workman shall not be borne by him alone, but by the industry and indirectly through the cost of the product by the public. Compare Murray Hospital v. Angrove, 92 Mont. 101, 107, 10 Pac. (2d) 577; Shea v. North-Butte Min. Co., 55 Mont. 522, 529, 179 Pac. 499.

R.C.M. 1947, section 92-838, provides that: "Whenever this act or any part or section thereof is interpreted by a court, it shall be liberally construed by such court." This court has consistently held that this means liberally construed in favor of a claimant. Compare Grief v. Industrial Acc. Fund, 108 Mont. 519, 526, 93 Pac. (2d) 961; Wirta v. North Butte Min. Co., 64 Mont. 279, 210 Pac. 332, 30 A.L.R. 964; Dosen v. East Butte Copper Min. Co., 78 Mont. 579, 254 Pac. 880; Gugler v. Industrial Accident Fund, 117 Mont. 38, 47, 157 Pac. (2d) 89; Tabor v. Industrial Accident Fund, 126 Mont. 240, 242, 247 Pac. (2d) 472; McCoy v. Mike Horse Mining & Milling Co., 126 Mont. 435, 252 Pac. (2d) 1036; Levo v. General-Shea-Morrison & Liberty National Ins. Co., 128 Mont. 570, 280 Pac. (2d) 1086.

Keeping the foregoing principles in mind, we find that the law, R.C.M. 1947, section 92-410, as far as pertinent here, provides: " 'Employer' means * * * every person, firm, * * * and private corporation * * * *who has any person in service, in hazardous employment,* under any appointment or *contract of hire, expressed or implied, oral or written,* and the legal representative of any deceased employer or the receiver or trustee thereof." Emphasis supplied.

R.C.M. 1947, section 92-411, as far as pertinent here, provides: " 'Employee' and 'workman' are used synonymously and mean every person in this state * * * *who is in the service of an employer as defined by the preceding section* [section 92-410], under any appointment *or contract of hire, expressed or implied, oral or written,* * * * but excluding any person whose employment is both casual and not in the courses of the trade, business, profession or occupation of his employer, *unless such*

*employer has elected to be bound by the provisions of the compensation law, in which case all employees are included, whether their employment is casual or otherwise, \* \* \*.''* Emphasis supplied.

Where, as here, the employer of the injured employee has become bound by and subject to the provisions of Compensation Plan No. 3, the Industrial Accident Fund ''shall be liable for the payment of compensation in the manner and to the extent hereinafter provided to an employee who has elected to come under this act, and who shall receive an injury arising out of and in the course of his employment \* \* \*.'' See R.C.M. 1947, section 92-614.

R.C.M. 1947, section 92-1101, provides in part: ''Every employer, subject to the provisions of compensation plan No. 3 shall, in the manner and at the times herein specified, pay into the state treasury, in accordance with the following schedule, a sum equal to the percentage of his total annual payroll specified in this section \* \* \*.''

R.C.M. 1947, section 92-207, provides in part: ''Every employer engaged in the industries, works, occupations, or employments in this act specified as 'hazardous', shall, on or before the first day of July, 1947, if such employer be then engaged in such hazardous \* \* \* work \* \* \* or, if such employer be not so engaged on said date, shall, before entering upon such hazardous work, \* \* \* elect or choose which of the plans mentioned in this act he or it will be bound by. \* \* \* *and a notice of such election, with the nature thereof shall be posted in a conspicuous place in the place of business of such employer, and a copy of such notice, together with an affidavit of such posting shall be filed with the board.''* The statute provides for a penalty if the employer fails to make such election or choice within the time provided, and that the failure to provide compensation for each employee shall be deemed a separate offense for the purpose of this Act.

In reading the workmen's compensation acts of the differ- states one finds that some are held to be optional, some

contractual, some compulsory, but no matter how denominated the intent of all such laws is to reach and cover the status of the employer-employee relationship, compare Cudahy Packing Co. of Nebraska v. Parramore, 263 U.S. 418, 44 S. Ct. 153, 68 L.Ed. 366, and the sure protection of the workman and his dependents, and in fixing a limited liability of the employer and in assuring the employee of compensation coverage in case of accident, injury or death.

Here the employer, Union Construction Company, a Mon- corporation, had and has its only office and place of business in Missoula. Relator now resides with his family in Missoula, Montana, and has so resided in Missoula for approximately the past 18 years. Relator was hired in Missoula, Montana, by the Union Construction Company and assigned to the road construction job, a part of which was in Idaho. Relator, while employed on this job, was living with his family within the State of Montana, and left Montana each morning to start each day's work and returned to Montana after each day's work was finished. Relator was paid for his labor by the Union Construction Company by checks on a Montana bank. Relator has never been a resident of Idaho. The Union Construction Company, a corporation, at all times herein has been bound by Plan No. 3 of the Workmen's Compensation Act and presumably had posted notice to that effect in its office at Missoula, as made mandatory by R.C.M. 1947, section 92-207. Of course the requirement that the employer shall post such notice of the plan he has adopted in a conspicuous place in his place of business is to give notice to his or its employees of the plan the employer is operating under, so that the employee may make his election to be bound or not. R.C.M. 1947, section 92-208.

Relator was seriously injured by accident arising out of and in the course of relator's employment on May 30, 1955, on this job a short distance across the Montana-Idaho state line and within the State of Idaho. Relator was not employed by the Union Construction Company, a corporation, for this specific

work in Idaho, but, on the contrary, it was expected that relator would continue working for said Union Construction Company on the road work within the State of Montana. At the time of receiving said injury relator's employment in Idaho was only temporary. So found the lower court in its findings of fact. There is sufficient evidence in the record to sustain the findings.

On the point of the job in Idaho being temporary and casual the relator testified:

"Q. How long had you been working in Idaho? A. I went to work the 15th of August.

"Q. This accident happend on August 30th? A. Yes, sir.

"Q. Did you have any knowledge, or had you ever been informed, as to how long you could expect to remain in the State of Idaho on this job? A. We were to finish that day.

"Q. What day are you referring to? A. 30th of August. * * *

"Q. What was to happen to you and to this equipment after this date of August 30th? A. It was to be moved into Superior, between Superior and the Diamond Match mill.

"Q. Is that within the State of Montana? A. Yes, sir. * * *"

The Industrial Accident Board of the State of Montana contends that the relator was hired for this particular job to work in the State of Idaho, and depends on the testimony of their witness, Harold J. Rogers, secretary-treasurer of the Union Construction Company, a corporation, which is as follows:

"Q. You may state your name. A. Harold J. Rogers.

"Q. You reside in Missoula? A. That's correct.

"Q. What is your connection if any with the Union Construction Company? A. I have the position of Secretary-Treasurer.

"Q. How long have you had such position? A. Sixteen months.

"Q. As such Secretary-Treasurer do you have charge of their office? A. I do completely, yes.

"Q. State whether or not the Union Construction Company is enrolled under Plan 3 of the Industrial Compensation Act of Montana. A. That's correct, they are.

"Q. You have compensation coverage in the State of Idaho? A. We do, yes, through the Liberty National Insurance Company.

"Q. When Mr. Morgan worked for you in Montana, did you report his employment to the State of Montana Industrial Accident Board and pay the required pay roll tax on it? A. During the time Mr. Morgan was employed in the State of Montana, his pay roll was reported to the Industrial Accident Board, Helena, on a monthly report form.

"Q. And you paid such payroll tax as they levied on it? A. That's correct.

"Q. If he went to work, as he has testified, on the 15th of August, 1955, that was over in Idaho? A. He was actually working in the State of Idaho, that's correct.

"Q. Your company had a contract over there? A. A private contract with the Diamond Match Company.

"Q. Building a road? A. That's correct.

"Q. During that time did you make any payment, or report his employment, to the State Industrial Accident Board in Montana? A. None whatsoever.

"Q. You did of course report to your insurance carrier? A. In the State of Idaho, that's correct.

"Q. Did Mr. Morgan have any contract of employment at this time with your company, that is, I mean a contract to be employed for any given length of time? A. We have no contract with any employe, other than a verbal agreement for employment.

"Q. You tell them to go to work? A. That's correct.

"Q. They work until the job is over, or they are fired? A. There is no written agreement for employment, with any employe."

It will be noted that nowhere in the testimony or in this record is it denied that the work of relator in Idaho was temp-

orary work of only a few days, and that it was anticipated and expected that relator would return to work on the Montana portion of the road, between Superior and the Diamond Match Company's mill.

The Board vigorously argues that our Workmen's Compen- [6] Law, being compulsory, is not contractual and that it can have no extraterritorial application, that only under an optional law could it be so, if at all. The contentions of the Board are entirely too sweeping. Our Act is based upon the employer-employee relationship as well as being contractual. Compare Restatement, Conflict of Laws, section 398, page 486, 1948 Supp., page 149, and at page 150, where it is stated: "The interest of the state, however, in the employer-employee relationship or in the regulation of local enterprise, is sufficient to empower the state to allow recovery, even though the contract of employment and the injury took place outside the state." Here, however, the work and labor of relator in Idaho, being only temporary and merely incidental to his employment and entirely for the benefit of and incidental to his employer's business in Montana, brings this case within the purview of Altman v. North Dakota Workmen's Compensation Bureau, 50 N.D. 215, 195 N.W. 287, 290, 28 A.L.R. 1337, relied on heavily by the Board.

In the Altman case, supra, after the court had held the provisions of their Act were compulsory, the court went on to say, "We do not mean to say that the employee may lose the right of recourse against the fund because the Bureau fails properly to require the inclusion of the salary or wages of such employee in the payroll on which the premium charge is based, or because the Bureau misconstrues the law. * * * It is not intended to hold that a person who is injured beyond the borders of the state in service which is incidental to an employment within the state may not recover under the Compensation Law. That question is *essentially different*, and is not before us." It can be seen that the facts and circumstances in the Altman case, supra, were entirely different from those in the case at bar,

and the North Dakota court expressly stated that if the facts and circumstances were as they are here it would be "essentially different".

In State ex rel. Loney v. Industrial Accident Board, 87 Mont. 191, at page 196, 286 Pac. 408, at page 409, this court in a unanimous opinion said:

"The Montana act does not carry a necessary inference against extraterritorial operation *in a proper case*. Had the lawmakers intended thus to confine its operation, it would have been easy to have said so, but they did not. Pierce v. Bekins Van & Storage Co., 185 Iowa 1346, 172 N.W. 191.

"Viewing the rationale of the act, and bearing in mind the liberal interpretation with which it should and must be construed (Dosen v. East Butte C. Min. Co., 78 Mont. 579, 254 Pac. 880; Edwards v. Butte & Superior Min. Co., 83 Mont. 122, 270 Pac. 634), we are satisfied that they did not so intend. The law contemplates that the burden of caring for injured workmen and their dependents shall not fall upon the public in general but upon the industry. Shea v. North-Butte Min. Co., 55 Mont. 522 [529], 179 Pac. 499; Betor v. National Biscuit Co., 85 Mont. 481, 280 Pac. 641."

And at page 197 of 87 Mont.; at page 410 of 286 Pac., the court expressly stated: "While section 2847 [now R.C.M. 1947, section 92-301] declares: 'This Act is intended to apply to all inherently hazardous works and occupations within this state,' we do not see that this necessarily excludes its operation beyond the limits of the state *where the employee, in the furtherance of his employer's business which is localized in Montana, and wihch he is following in passing over the state line, meets with an accidental injury. * * *"* Emphasis supplied. Compare Post v. Burger & Gohlke, 216 N.Y. 544, 111 N.E. 351.

R.C.M. 1947, section 92-411, does not have the effect asserted in the dissenting opinion. It defines employee or workman as meaning "every person in this state * * * who is in the service of an employer as defined by the preceding section [92-410] under *any* appointment or *contract of hire*". Empha-

sis supplied. Where, as here, Morgan did at all times maintain his domicile and residence in this state and entered into a contract of employment and hire with an employer domiciled and having its only office and place of business in this state, he meets the requirements of section 92-411 even though he is assigned to his employer's work which temporarily takes him outside the State of Montana.

A more persuasive argument could be made that R.C.M. 1947, section 92-301, was intended to exclude work of such an employee outside the state. It expressly states, as above noted, that the Act is intended to apply "to all inherently hazardous works and occupations within this state". However this court unanimously and expressly held under similar facts in the Loney case, supra, that this section did not exclude the operation of the Act beyond the limits of the state. See above quote, at page 197 of the Loney case in 87 Mont. 268 Pac. at page 409.

The circumstances in the Loney case, supra, that Glacier Park was actually located within the exterior boundaries of Montana does not alter the effect of that case. Though Glacier Park is within the boundaries of the State of Montana, this state is deprived of jurisdiction of such matters within the boundaries of said park the same as it is over such matters within the State of Idaho. The same reasoning that extends operation and jurisdiction of the Workmen's Compensation Act over work done in the Park as in the Loney case, supra, extends its operation and jurisdiction in a proper case such as this.

In Bradford Elec. Light Co., Inc., v. Clapper, 286 U.S. 145, 156, 52 S. Ct. 571, 574, 76 L. Ed. 1026, the court said, "But, obviously, the power of Vermont to effect legal consequences by legislation is not limited strictly to occurrences within its boundaries. It has power through its own tribunals to grant compensation to local employees, locally employed, for injuries received outside its borders, compare Quong Ham Wah Co. v. Industrial Accident Commission, 255 U.S. 445, 41 S. Ct. 373, 65 L.Ed. 723, dismissing writ of error, 184 Cal. 26, 192 Pac.

1021, 12 A.L.R. 1190; and likewise has power to exclude from its own courts proceedings for any other form of relief for such injuries.''

For decisions construing state workmen's compensation acts as above construed, see the above case, Note 6, 286 U.S. 156, 52 S. Ct. 574; among cases cited therein is the Montana Case of Loney, supra. Compare Alaska Packers Ass'n v. Industrial Acc. Comm. of California, 294 U.S. 532, 55 S. Ct. 518, 79 L.Ed. 1044; Cardillo v. Liberty Mutual Ins. Co., 330 U.S. 469, 67 S. Ct. 801, 91 L. Ed. 1028.

It should be again noted that workmen's compensation acts are construed almost universally as being based on the relationship of employer and employee, as well as on the theory of contract.

As the court said in Alaska Packers Ass'n v. Industrial Acc. Comm, supra, 294 U.S. at page 541, 55 S. Ct. at page 521, ''The liability under Workmen's Compensation Acts is not for a tort'', the legal consequence of which must be controlled by the law of the place where the tortious act is committed. On the contrary, liability therefore ''is imposed as an incident of the employment relationship, as a cost to be borne by the business enterprise, rather than as an attempt to extend redress for the wrongful act of the employer.'' The United States Supreme Court upheld therein the right of the state, in which the contract of employment was made, to award compensation although the injury occurred in another jurisdiction which also provided for compensation in that event. It was therein held that the state in which the contract was made had sufficient control over the employer-employee status created thereby to give effect to legal consequences resulting therefrom, created by its own statutes. Compare Cudahy Packing Co. of Nebraska v. Parramore, supra.

The relation between Johnston E. Morgan and the Union Construction Company was created by the law of Montana, and as long as that relation existed its incidents were properly subject to regulation in Montana, for both Morgan and the company

were at all times residents of Montana; the company's only office and place of business was located at Missoula, Montana; the contract of employment was made at its office in Missoula, Montana; and the employee Morgan's duty as an employee required him to go into Idaho temporarily in response to the orders given him by the company at its Montana office.

The purpose of our Act, as it true of the workmen's compen-

[9] laws of most other states, is to provide, in respect to persons residing in and businesses located in Montana, a remedy which is presumed to be expeditious and independent of proof of fault, and also for employers a liability which is limited and determinate. The interest of Idaho, if any, in this case would be only casual, neither of the parties herein being resident there, and under the laws of Idaho (which were not called to our attention) it could easily be that Idaho would reject this claim. Compare Bradford Elec. Light Co., Inc. v. Clapper, supra, and cases cited therein.

The public policy of Montana is well established in that un- the facts in this case, where employer and employee are resident in this state and such relationship is entered into in Montana, the Montana law applies. Under such circumstances Montana does not waive nor subordinate its domestic policy and jurisdiction to the laws of any other state. It would not only be obnoxious to our policy and law under the facts here to deny such employees the right to apply for and receive compensation, but it would be against the policy and interests of Montana. To deny jurisdiction here would require this injured workman, if he has funds for such expense, together with his doctors, the hospital, the special nurses and the druggist, all of whom contributed to his treatment, to journey to a foreign jurisdiction and there take their chances of having their claims rejected, leaving the injured workman and his family as a charge on the Montana community in which they reside. To deny jurisdiction in this case would be a disservice to the injured workman, his dependents, and those waiting for their payments, the community and to Montana, and would do vio-

lence to the very nature of the Workmen's Compensation Act, which is protective legislation for each of the above.

In Johnson v. Falen, 65 Idaho 542, 149 Pac. (2d) 228, 229, the Supreme Court of Idaho held, "If the particular employment, though outside the state, be so connected with the employer's business within the state as to be a concomitant and integral part thereof, the statute may reasonably be construed under a liberal interpretation thereof to encompass within the Board's jurisdiction accidents happening in the course of such employment." Compare Mulanix x. Falen, 64 Idaho 293, 120 Pac. (2d) 866, where employee was employed and hired in Idaho, injured in accident in Montana. Employee recovered benefits under Idaho law. It is apparent from the Idaho statute that a workman must be hired in Idaho to receive benefits under their workmen's compensaiton act. See sections 72-203 and 72-615, Idaho Code 1947.

Each compensation case must be decided upon its own fact features in the application of the law.

In interpreting and construing our Workmen's Compensation Act and its various parts, this court has said, "When it is open to more than one interpretation, one favorable to the employee and the other against him, we must give it the construction most favorable to the injured workman in order to carry out the humane purposes of the Act." Geary v. Anaconda Copper Min. Co., 120 Mont. 485, 489, 188 Pac. (2d) 185, 186, compare Dosen v. East Butte Copper Min. Co., 78 Mont. 579, 254 Pac. 880; Grief v. Industrial Acc. Fund, 108 Mont. 519, 93 Pac. (2d) 961. Regardless of the fact that the statute may be optional, contractual or compulsory, the weight of authority is to the effect, under such facts and circumstances as we have here, that the state courts will apply the domestic compensation law. See 71 C.J., Workmen's Compensation Acts, pages 304, 305, 306 (sec. 26B), and cases cited; compare 58 Am. Jur., Workmen's Compensation, pages 599, 600 and 601, wherein it is stated: "The statute of the state wherein the contract was made, and wherein the employer does business, has

been held applicable to injuries occurring without the state, notwithstanding the contract was for services to be performd wholly without the state, where such services are incidental to the business conducted within the state.''

Ambiguity in our workmen's compensation statutes will be resolved in favor of the employee. Employees such as Morgan, who are resident citizens of this state, employed and paid in Montana through the only office of their employer, are entitled to the benefits of the Workmen's Compensation Laws of Montana.

It has been held in the application of the doctrine of extrater- [14] that the rights and duties of the parties with respect to compensation for injuries are impressed with the employer-employee status and contractual character even in the case of a compulsory statute. One of the principal arguments in favor of construing compensation statutes under the facts here as having extraterritorial operation is that such operation is necessary for the accomplishment of the primary objects and purposes of such legislation to charge the cost of personal injuries sustained in industrial accidents upon the industry itself, and to secure prompt payment of compensation for such injuries by a simple and inexpensive method of procedure. See 58 Am. Jur., Workmen's Compensation, section 38, page 601.

The Board erred in not taking and assuming jurisdiction of the application and claim of relator, Johnston E. Morgan, and hearing the case upon the merits. The denial of jurisdiction by the Board raises a preliminary question of law, and mandamus is the proper remedy to compel the Industrial Accident Board to act. Compare Shugg v. Anaconda Copper Min. Co., 100 Mont. 159, 46 Pac. (2d) 435; Paulich v. Republic Coal Co., 110 Mont. 174, 102 Pac. (2d) 4; State ex rel. Loney v. Industrial Acc. Board, supra.

The judgment of the district court is affirmed, with costs to relator.

MR. CHIEF JUSTICE ADAIR, and MR. JUSTICES ANGSTMAN and ANDERSON, concur.

MR. JUSTICE DAVIS:

I dissent.

The issue presently before this court for decision is shortly stated. It is: Does the Montana Workmen's Compensation Act (hereafter the Act) cover an industrial accident which occurs beyond the territorial limits of the state? I think it plain from the language of the statute itself that it does not. Admittedly to entitle the claimant Morgan under our law to compensation for the injury he sustained in Idaho on August 30, 1955, he must show that he was at that time an employee or workman within the meaning of R.C.M. 1947, sections 92-411, 92-1118. This premise is denied by no one.

Section 92-411, so far as pertinent to this proceeding, reads as follows:

"92-411. (2863) Employee and workman defined. 'Employee' and 'workman' are used synonymously and mean every person *in this state,* * * * who is in the service of an employer as defined by the preceding section, under any appointment or contract of hire, expressed or implied, oral or written, * * *." Emphasis supplied.

This statute is of the very essence of any right Morgan may have to compensation; for unless he is an employee or workman within the definition given there, he may not recover anything. This statute, is moreover, for me susceptible of but one meaning, which is so clearly expressed that its language is not open to construction. For I hold yet to the opinion, which but recently I summarized in stating the reasons for my disagreement with the majority in Spieth v. Stuart, 130 Mont. 216, 299 Pac. (2d) 106, that although it is our duty to read and apply the compensation act liberally, we may not under the guise of liberal construction construe where no construction is necessary to extract a plain meaning plainly expressed. Here I can conceive of no language which the legislature could have

used in writing section 92-411 to express its intent more plainly than the words and phrases which I have quoted from this section. Therefore I shall indulge in no construction at all. Rather I shall apply the statute as I find it.

Before Morgan then may recover in this proceeding it must appear that on August 30, 1955, he was an employee or workman within the definition given in section 92-411 as I have quoted from its text; i.e., he must have been on August 30, 1955, a "person in this state" in the service of an employer, as an employer is defined in R.C.M. 1947, section 92-410. There is no question that Union Construction Company was Morgan's employer when he was injured. We may therefore pass section 92-410 without further comment. The controlling question is thus reduced to the narrow inquiry whether on August 30, 1955, Morgan was a "person in this state". If so, he may recover.

But obviously he was not. Obviously he was on August 30, 1955, a person in the State of Idaho, and the words "person in this state" obviously cannot be said to include a person in the State of Idaho. The rule of *expressio unius est exclusio alterius* applies. When section 92-411 says an employee or workman for the purposes of the Act is a person employed "in this state", there is excluded from that definition and from the coverage cast thereby under the Act a person employed in any other state, as was Morgan's employment on August 30, 1955, in Idaho. Compare Page v. New York Realty Co., 59 Mont. 305, 317, 196 Pac. 871; Stephens v. City of Great Falls, 119 Mont. 368, 381, 175 Pac. (2d) 408.

It follows in my opinion that Morgan is not a "workman", who is entitled to compensation under the Act; and it makes little difference in reaching this conclusion whether I say that Morgan may not recover because on August 30, 1955, he was not covered by the Act, or because the Act has no extraterritorial force. In any case in my opinion the Board was right in refusing to consider his claim; for he has no claim under our statute.

Hence it is wholly immaterial, as I see it, that Morgan was hired at Missoula, Montana, that he made his home there, that to work his daily shift in Idaho he left Missoula in the morning and returned there in the evening of the same day, that after he was injured on August 30, 1955, he was hospitalized at Missoula, that he was paid for his labor by checks drawn on a Montana bank, etc. The determinative fact yet is that within the plain meaning of section 92-411 he was on August 30, 1955, a person employed in the State of Idaho, as had been his daily employment there since August 15, 1955. It is undenied that he worked on this job exclusively in Idaho, that that job itself was undertaken and carried on by his employer in the usual and ordinary course of its business exclusively in Idaho. Neither that job nor his employment on it had anything to do with any work or employment in Montana.

In short from the record before me it appears that Morgan's employment in Idaho was neither casual nor temporary within the meaning of R.C.M. 1947, section 92-436, which must also be given effect. He was employed in Idaho for the duration of the job there, which was to finish on August 30, 1955, the day he was injured. In the words of section 92-436 he was employed there "in the usual course of * * * business, * * * of the employer", Union Construction Company. The lower court's finding to the contrary that his "employment in Idaho was only casual and temporary" is not only contradicted by all the evidence in the record, but is squarely opposed to the statutory definition of "casual employment", which the Act sets up. This finding is without any substantial evidence to support it, and accordingly must be disregarded consistent with the rule of State ex rel. Anderson v. Gile, 119 Mont. 182, 186, 172 Pac. (2d) 583.

There is nothing in State ex rel. Loney v. Industrial Accident Board, 87 Mont. 191, 286 Pac. 408, which conflicts with the views I have expressed in this dissent. No such facts were there before this court as are the facts which Morgan's case now brings here; and it is settled law that general statements found

in the opinion written in Loney's case are to be read in the light of the facts of that case which the court was then considering. Lindblom v. Employers' Liability Assurance Corp., 88 Mont. 488, 499, 295 Pac. 1007; Farbo v. School District No. 1, 95 Mont. 531, 538, 539, 28 Pac. (2d) 455; Forbes v. Mid-Northern Oil Co., 100 Mont. 10, 18, 45 Pac. (2d) 673; Beckman Bros., Inc., v. Weir, 120 Mont. 305, 312, 313, 184 Pac. (2d) 347.

Loney was employed in the construction of a road which was being built in the State of Montana and also into Glacier National Park. At all times however he was employed in the State of Montana; for it was noted in the opinion in his case that Glacier National Park lay within the territorial boundaries of Montana. He was accordingly at the time of his injury a "person in this state" in the service of an employer within the meaning of section 92-411, as that statute is written; and although this court did not mention that section in deciding that the Board must take jurisdiction, no other conclusion could have been reached consistent with its language than that the Industrial Accident Board had jurisdiction, and was therefore properly to be coerced by mandamus to exercise that jurisdiction. The facts of Morgan's claim at bar are to the precise contrary, as I have already indicated, that his employment was not in this state and was not connected with any employment in this state, and that when injured he was not a person in this state.

My conclusion that Morgan's injury is not compensable under our law as it stands today does not deny the legislature the power to extend our compensation statutes in a proper case to an industrial accident which occurs beyond the state line. Without doubt an Act can be drafted consistent with the state and federal constitutions which would cover an injury such as Morgan suffered on August 30, 1955, in Idaho. In Gould's Case, In re Gould, 215 Mass. 480, 102 N.E. 693, there was brought before the Supreme Judicial Court of Massachusetts a Workmen's Compensation Act similar in many respects to the statutes presently in force in Montana. There the Massachusetts

Court reached the conclusion, as I have here, that the Act then before it was limited in its impact by the territorial boundaries of the Commonwealth of Massachusetts. The opinion in that case was careful to point out however that the court assumed it to be within the "power of the Legislature to give to the act" effect without the state if it chose to do so. See Gould's Case, supra, 215 Mass. at pages 483, 484, 102 N.E. at page 694. Subsequently Massachussets did extend its compensation statutes to include certain injuries sustained in other states; this, by an amendment made in 1927. Compare Pederzoli's Case, 269 Mass. 550, 169 N.E. 427. So in California the original workmen's compensation statutes of that state were construed in North Alaska Salmon Co. v. Pillsbury, 174 Cal. 1, 162 Pac. 93, L.R.A. 1917E, 642, to be without effect beyond the borders of California. But subsequently by Chapter 586, section 58, California Statutes, 1917, jurisdiction was given the Industrial Accident Commission of that state to hear claims in specified cases for injuries occurring in other states. Compare Alaska Packers' Association v. Industrial Accident Commission, 200 Cal. 579, 581, 253 Pac. 926.

If our legislature chooses to amend the Act presently in force in Montana, our law can then be brought into line with the existing statutes of Massachusetts and California, and as well of Connecticut, Illinois, Indiana, Minnesota, New Jersey, New York, Rhode Island, West Virginia, and the District of Columbia. But as now written our Act is not like the statutes in effect in those jurisdictions. The amendment to be made here, if made, calls for legislation, which lies beyond the province of this court. We may properly on this appeal only interpret and apply the statute as written.

I would reverse the judgment of the district court and dismiss the proceedings, leaving Morgan to his remedy under the Idaho Workmen's Compensation Act, section 72-101, et seq., with which his employer is in compliance.