DA 11-0109

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2011 MT 197

VICTOR J. TACKE,

      Plaintiff and Appellant,

    v.

MONTANA LAKESHORE PROPERTIES, LLC,

      Defendant and Appellee.

| | |
|---|---|
| APPEAL FROM: | District Court of the Twentieth Judicial District, In and For the County of Lake, Cause No. DV 10-15 Honorable Deborah Kim Christopher, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

            Thane Johnson; Johnson, Bert, McEvoy & Bostock, PLLP; Kalispell, Montana

      For Appellee:

            Reid J. Perkins; Worden Thane, PC; Missoula, Montana

Submitted on Briefs: July 20, 2011

Decided: August 16, 2011

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Victor J. Tacke (Tacke) appeals from the findings of fact, conclusions of law, and order entered by the Twentieth Judicial District Court, Lake County, granting summary judgment to Montana Lakeshore Properties, LLC, (Lakeshore), and declaring the tax deed held by Lakeshore to the subject property is valid and enforceable. We affirm.

¶2 *Did the District Court err by granting summary judgment upholding the tax deed obtained by Lakeshore?*

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 The material facts are undisputed. Tacke failed to pay the real property taxes assessed against his property located in the Lac Cygne Shores subdivision, Lake County, in 2005, 2006, 2007, and 2008. In July 2006, Lake County (County) conducted a tax sale for the year 2005, at which the County purchased the tax lien.

¶4 About three years later, on June 1, 2009, at 4:55 p.m., Central Standard Time, Lakeshore mailed a notice via certified mail to Tacke stating, in part:

**NOTICE OF PENDING ASSIGNMENT**
(Pursuant to 15-17-212 and 15-17-323, MCA)

**THIS NOTICE IS VERY IMPORTANT** with regard to the purchase of the Tax Sale Certificate, which Lake County holds on the following property. If the delinquent taxes are not paid in full within **2 WEEKS** from the date of this notice, an assignment of Tax Sale Certificate will be purchased. **THIS COULD RESULT IN THE LOSS OF YOUR PROPERTY LISTED BELOW**.

The notice further indicated that Lakeshore was the party interested in purchasing the tax sale certificate to the property.[1] The notice was signed by Lakeshore's representative and mailed from Edina, Minnesota, to Tacke's address.

¶5 On June 15, 2009, at 1:10 p.m., Mountain Standard Time, the County assigned its interest in the tax lien to Lakeshore in exchange for payment of the past due taxes, penalties, interest, and related costs in the amount of $14,644.41,[2] issuing a tax sale certificate to Lakeshore. Tacke challenges this step in the process.

¶6 Around a month later, in July 2009, Lakeshore mailed via certified mail, return receipt requested, a notice to Tacke informing him that a tax deed would be issued to the property unless the taxes, penalties, interest, and costs were paid prior to the expiration of the redemption period on September 16, 2009, and provided a copy of the County's assignment of the tax lien to Lakeshore.[3] Tacke signed for the notice but did not redeem the lien prior to the expiration of the redemption period, and the County issued a tax deed to Lakeshore in October 2009.

---

[1] Lakeshore states that it is an entity "owned by neighbors whom [sic] want to see the property cleaned up." Lakeshore describes the property as an "eye sore" and a potential health hazard. The District Court made no findings of undisputed fact about these matters.

[2] This amount included all unpaid back taxes. The amount due for the 2005 tax year was $2,385.62.

[3] The time for redemption of a property tax lien is governed by § 15-18-111, MCA, which provides, generally, that redemption may be made within 36 months from the date of the first day of the tax lien sale or within 60 days following the service of notice by a tax lien purchaser that a tax deed will be issued, whichever is later. *See also* § 15-18-212, MCA. Neither the notice nor the timing of the redemption period is at issue here.

¶7 In January 2010, Tacke filed this action to quiet title in the property, seeking a "judicial declaration that the tax deed is void." After discovery, Lakeshore filed a motion for summary judgment. Tacke opposed the motion and also sought leave to file a cross motion for summary judgment, which was initially denied by the District Court as untimely, but ultimately considered by the court. At the hearing on summary judgment, Tacke's counsel argued primarily that Lakeshore had paid the back taxes 2 hours and 45 minutes short of the two week period stated in Lakeshore's notice, offering "I know that gets down to the pedantic like I said, but that's what the tax deed arguments have turned into." Lakeshore's attorney responded that "when it says weeks they mean weeks; when it says days they mean days. It doesn't say so many hours or so many seconds. Are we going to get to the point where this was filed at 1:03 and 31 seconds?"

¶8 After taking counsel's arguments, the District Court ruled from the bench in favor of Lakeshore, stating "the statutory authority provides for two weeks. Two weeks having been given, then that's sufficient . . . [T]he Supremes can give us a final decision." The court thereafter entered its written findings of fact, conclusions of law, and order.

## STANDARD OF REVIEW

¶9 We review a district court's grant of summary judgment de novo. *Showell v. Brosten*, 2008 MT 261, ¶ 9, 345 Mont. 108, 189 P.3d 1210; *Boyes v. Eddie*, 1998 MT 311, ¶ 15, 292 Mont. 152, 970 P.2d 91. If there are no genuine issues of material fact, as here, we then determine whether the district court correctly ruled that the moving party is entitled to judgment as a matter of law. *Showell*, ¶ 9. We review this legal conclusion

4

for correctness. *Showell*, ¶ 9. "'A statutory interpretation is a conclusion of law, which we review to determine whether the district court's interpretation of the law is correct.'" *Bitterroot River Protective Ass'n v. Bitterroot Conserv. Dist.*, 2008 MT 377, ¶ 70, 346 Mont. 507, 198 P.3d 219 (quoting *State v. Price*, 2002 MT 150, ¶ 15, 310 Mont. 320, 50 P.3d 530).

## DISCUSSION

¶10   ***Did the District Court err by granting summary judgment upholding the tax deed obtained by Lakeshore?***

¶11   Tacke challenges the timing of the payment of the delinquent taxes by Lakeshore, based on § 15-17-212(3), MCA (2007),[4] which provides:

> (3) Prior to paying delinquent taxes, penalties, interest[], and costs received by the county treasurer . . . a person shall send notice of the proposed payment, by certified mail, to the person to whom the property was assessed. The form of the notice must be adopted by the department by rule. *The notice must have been mailed at least 2 weeks prior to the date of the payment.* The person making the payment shall provide proof of the mailing. [Emphasis added.]

¶12   Tacke first argues that the District Court erred by failing to add 3 days to the two week statutory period for purposes of mailing, pursuant to Rule 6(e) of the Montana Rules of Civil Procedure,[5] and thus extend the time before which Lakeshore could purchase the tax lien by those additional days. However, the Rules of Civil Procedure

---

[4] The District Court determined that the 2007 version of the Montana Code Annotated was applicable to the dispute. Although Tacke cites the 2009 version of the statutes, he does not take issue with the District Court's application of the 2007 version.

[5] M. R. Civ. P. 6(e) provides: "**Additional time after service by mail.** Whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon the party and the notice or paper is served upon the party by mail, 3 days shall be added to the prescribed period."

"govern the procedure in the district courts of the state of Montana in all suits of a civil nature whether cognizable as cases at law or in equity . . . ." M. R. Civ. P. 1 (entitled "Scope of rules"). The statutory procedure for purchasing a tax lien is a nonjudicial process involving the parties and the office of the county treasurer. The notice must be given "[p]rior to paying delinquent taxes, penalties, interest[], and costs received by the county treasurer . . . ." Section 15-17-212(3), MCA. Then, "the county treasurer shall prepare a tax lien sale certificate," which is delivered to the purchaser. Section 15-17-212(1)-(2), MCA. This administrative procedure, including the mailing of a notice of intent under § 15-17-212(3), MCA, is not a civil suit, and does not proceed before the district court. The 3 day mailing rule of Rule 6(e) does not apply.

¶13 Tacke then argues, even if the 3 day mailing rule does not apply, Lakeshore nonetheless violated the statute by paying the back taxes 2 hours and 45 minutes short of two weeks. Converting the time to hours, Tacke argues that Lakeshore "paid the delinquent taxes only after the expiration of three hundred thirty-three (333) hours and fifteen (15) minutes when a full fourteen days, (at least two weeks) demands the expiration of three hundred thirty-six (336) hours." The District Court rejected this argument, relying on § 1-1-305, MCA, which provides:

> **Computation of time—when fractions of a day disregarded.**
> Fractions of a day are disregarded in computations which include more than 1 day and involve no questions of priority.

The court analyzed our decision in *State v. Fitzgerald*, 283 Mont. 162, 940 P.2d 108 (1997), which applied this statute. In *Fitzgerald*, the defendant, charged with driving

6

under the influence, challenged the Intoxilyzer machine used to measure his blood alcohol level on the basis of Admin. R. M. 23.4.213, which then provided that machines had to be certified for accuracy "at least once every seven (7) days." *Fitzgerald*, 283 Mont. at 167, 940 P.2d at 111. The machine in question had been tested August 16 at 8:47 a.m., and again on August 23 at 8:59 a.m., and Fitzgerald argued that the machine had not been certified "at least once every seven days," because of the 12 minute discrepancy. *Fitzgerald*, 283 Mont. at 167, 940 P.2d at 111. In rejecting the argument, we cited § 1-1-305, MCA, and explained that "[f]or most purposes, the law regards the day as an indivisible unit. . . . Departure from this rule is allowed when it becomes necessary to inquire into the order or sequence of two or more events occurring on the same day to determine a question of priority or right, or when the computation includes only one day or less." *Fitzgerald*, 283 Mont. at 168, 940 P.2d at 111-12 (citing *Kelly v. Indep. Publg. Co.*, 45 Mont. 127, 133, 122 P. 735, 736 (1912)). The District Court reasoned that, as in *Fitzgerald*, neither of the exceptions to § 1-1-305, MCA, applied because the priority of multiple filings was not an issue and the time computation in the tax deed statutes was more than one day, and concluded the "contention that the payment of the taxes was 2 hours and 45 minutes too early fails as a matter of law."

¶14 Tacke disputes the District Court's conclusion that this case does not involve a question of priority. His briefing describes the case as "the proverbial 'race to the courthouse door,'" argues the "[f]irst in time, first in right" principle applies, and asserts that "[Lakeshore] and Tacke literally raced to the Courthouse door." However, first, as a

factual matter, Tacke points to no evidence indicating that he attempted to pay the delinquent taxes at all, let alone make a mad dash to the courthouse to pay them before Lakeshore. The District Court indicated that Tacke did not even pay the lien prior to the expiration of the later redemption period, after another notice was given. Secondly, as a legal matter, the tax lien statute requires neither a race to the courthouse nor application of "first in time, first in right" because, even if Tacke had lost such a race, he would nonetheless have been entitled to redeem the lien from Lakeshore during the following redemption period. The legal concept of priority was not at issue here.

¶15 Lastly, Tacke argues that reversal is mandated under the principles expressed in our cases, particularly *Showell*. We reiterated there that "[p]rocedures for obtaining a tax deed require strict statutory compliance." *Showell*, ¶ 14 (citing *Tax Lien Servs. v. Hall,* 277 Mont. 126, 133, 919 P.2d 396, 400 (1996)). We stated that "[a] critical element in the process of obtaining a tax deed is giving notice to the owner of the real property," and that, "[i]f the legal requirements with respect to the notice are not complied with," then due process rights have been abridged and the treasurer "may not legally issue a tax deed." *Showell*, ¶ 14 (citing *Moran v. Robbin*, 261 Mont. 478, 483, 863 P.2d 395, 398 (1993); *Isern v. Summerfield*, 1998 MT 45, ¶ 20, 287 Mont. 461, 956 P.2d 28)). Citing these principles, Tacke argues that the District Court erred "in finding that [Lakeshore] complied with the notice requirements of the tax deed statutes."

¶16 Tacke is correct that we are careful in tax deed cases to ensure strict compliance with statute, proper notice, and due process to the owner of the subject real property.

8

However, it is notable that, despite Tacke's argument that the notice requirements were violated, this appeal involves no alleged defect in notice given to Tacke. Proper notice has been conceded. Rather, his objection is to the shortage in the timing of Lakeshore's post-notice payment made on the afternoon of June 15, 2009. Considering that deficiency, we can conceive of no benefit which would have accrued to Tacke had Lakeshore's representative waited in the courthouse lobby for another 2 hours and 45 minutes, and made payment at 3:55 p.m., Mountain Standard Time, rather than 1:10 p.m. As noted, there was no "race to the courthouse" on that day. Then, Lakeshore waited another month before giving notice to Tacke that a tax deed would issue following the redemption period. The redemption period would not have been subject to a different calculation had Lakeshore delayed its payment until 3:55 p.m. on June 15. *See* §§ 15-18-111, -212, MCA. After Lakeshore's subsequent notice by certified mail to Tacke of his opportunity to redeem the tax lien, Tacke again failed to act. "'[N]either law nor equity require[s] useless acts.'" *Stockman Bank of Mont. v. Mon-Kota, Inc.*, 2008 MT 74, ¶ 41, 342 Mont. 115, 180 P.3d 1125 (quoting *DeVoe v. Dept. of Revenue*, 263 Mont. 100, 115, 866 P.2d 228, 238 (1993)); *see* § 1-3-223, MCA. This case fits within the general principle that "the law regards the day as an indivisible unit" and discards fractional days in most time computations, here, a two week period. *Fitzgerald*, 283 Mont. at 168, 940 P.2d at 111-12; § 1-1-305, MCA.

¶17 We conclude that the District Court properly applied the statutes. Tacke received due process. The District Court correctly entered summary judgment upholding the tax deed obtained by Lakeshore.

¶18 Affirmed.


/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS


Justice Jim Nelson specially concurs.

¶19 I specially concur with the result of the Court's Opinion on the unique facts of this case. That said, in my view, this decision should not be read to lessen, by one iota, this Court's commitment to the principles of strict construction of tax deed proceedings set forth in *Showell v. Brosten*, 2008 MT 261, ¶ 14, 345 Mont. 108, 189 P.3d 1210 and *Tax Lien Services v. Hall*, 277 Mont. 126, 133, 919 P.2d 396, 400 (1996). If I believed the contrary to be true, I would not be joining this decision. In particular, despite the application of § 1-1-305, MCA, in this case, I note that § 15-17-212(3), MCA (2007),[1] requires *at least* two weeks prior notice, not just two weeks prior notice. The

---

[1] The 2009 version of the Montana Code Annotated did not change; therefore, the language is the same.

Legislature's use of the "*at least*" qualifier precludes the application of § 1-1-305, MCA, where the tax deed applicant has not given prior notice of two weeks *plus* something more than that.  My concern is that the *at least* language of § 15-7-212(3), MCA, not be swallowed up in the Court's decision here.

¶20    With that caveat, I specially concur.

/S/ JAMES C. NELSON