**ZINVEST, LLC.,**
**Plaintiff and Appellant,**
**v.**
**MICHAEL A. HUDGINS; ANGELA K.**
**HUDGINS; and all other persons, unknown,**
**claiming or who might claim any right, title,**
**estate, or interest in or lien or encumbrance**
**upon the real property described in the**
**complaint adverse to plaintiff's ownership**
**or any cloud upon plaintiff's title thereto,**
**whether such claim or possible claim be**
**present or contingent,**
**Defendants and Appellees.**

No. DA 13-0854.
Submitted on Briefs July 2, 2014.
Decided July 29, 2014.
2014 MT 201.
376 Mont. 72.
330 P.3d 1135.

For Appellant: **W. Scott Green**, Patten, Peterman, Bekkedahl & Green, PLLC, Billings.

For Appellee: **William J. Nelson**, Nelson Law Office, PLLC, Hamilton.

JUSTICE COTTER delivered the Opinion of the Court.

¶1 In June 2012, Zinvest, LLC, purchased improved property located in Hamilton, Ravalli County, Montana, following a tax sale. At the time of the purchase, Michael and Angela Hudgins, the record owners of the property, had not paid taxes on the property since their acquisition of the property in January 2008. Following receipt of the tax deed, Zinvest filed a quiet title action and the Hudgins appeared and opposed the action. Hudgins claimed that because Zinvest and the Ravalli County Treasurer had not strictly complied with the applicable tax lien sale statutes, the tax deed was void. During the quiet title proceeding, Zinvest filed a motion for summary judgment and Hudgins responded. The Twenty-First Judicial District Court for Ravalli County, *sua sponte* converted Hudgins' response to a cross-motion for summary judgment. The court denied Zinvest's motion and granted Hudgins' cross-motion. Zinvest appeals. We reverse and remand.

## ISSUE

¶2 A restatement of the dispositive issue is:

¶3 Did the District Court err in denying Zinvest's motion for summary judgment and granting Hudgins' cross-motion for summary judgment on the ground that the County Treasurer failed to file an affidavit of publication as required by § 15-17-123, MCA?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 In January 2008, Michael and Angela Hudgins bought the property located at 66 Bear Trax Street, Hamilton, Montana. The couple did not pay property taxes on the property during the four years they owned it. As a result of this failure to pay each year, the Ravalli

County Treasurer's office was authorized to sell the property at a tax lien sale. Section 15-17-211, MCA. Beginning in July 2009, and again in July 2010 and July 2011, the County Treasurer held a tax lien sale for this property and published notice of each sale in accordance with § 15-17-122, MCA. However, no one purchased the property at any of these sales. Consequently, the County acquired the lien each year and generated a tax lien sale certificate in its name and in the amount of the unpaid taxes plus other costs. Section 15-17-214, MCA.

¶5 In late 2011 or early 2012, Zinvest, which is in the business of purchasing assignments of tax sale certificates, became interested in the property. On April 30, 2012, Zinvest prepared a "Notice of Pending Assignment" that was sent by certified mail to the Hudgins. Sections 15-17-212(3) and 15-17-323(5), MCA. The notice informed the Hudgins that if they did not pay the back taxes on the property within two weeks, Zinvest intended to pay the taxes and purchase the tax lien sale certificates held by Ravalli County and the Hudgins would lose their property. It is undisputed that Hudgins did not pay the taxes on the property.

¶6 On June 18, 2012, Zinvest paid the delinquent taxes totaling $4,057.90 as well as an assignment fee of $75.00 and the County issued Zinvest an Assignment of Tax Sale Certificate on the same day. Section 15-17-318, MCA. In July 2012, after confirming the Hudgins' ownership of the property and their mailing address, Zinvest prepared and had published in the local newspaper a "Notice that a Tax Deed May be Issued." This notice ran for two consecutive weeks. Additionally, the notice was sent to Hudgins by certified mail, return receipt requested. Copies of the envelopes transmitting the notice indicate that they were returned to Zinvest stamped "Refused—Unable to Forward." On August 6, 2012, Zinvest prepared and filed a "Proof of Notice" with the Clerk and Recorder of Ravalli County indicating Zinvest's compliance with the notice requirements set forth in § 15-18-212, MCA.

¶7 On September 27, 2012, after the redemption period had expired, Zinvest contacted the Ravalli County Treasurer and learned that the Hudgins had not paid the delinquent taxes on the property. Zinvest therefore applied for and received a tax deed to the property which was recorded with the Clerk and Recorder on September 28, 2012. On October 29, 2012, Zinvest proceeded with a quiet title action, and requested that the sheriff's office serve the proper documentation upon the Hudgins. The deputy signed an Affidavit of Service indicating service had been made upon both Michael and Angela Hudgins on

December 3, 2012. On December 6, 2012, Hudgins appeared and answered Zinvest's complaint. After publishing notice of the summons to notify any "unknown defendants" of the quiet title action, all "unknown defendants" were defaulted. The only defendants to appear and assert a claim to the property were the Hudgins.

¶8 On May 15, 2013, Zinvest moved for summary judgment on the grounds that it was the fee simple owner of the property and all tax deed proceedings had been accomplished in compliance with Montana law. On June 10, 2013, Hudgins responded to Zinvest's motion for summary judgment asserting that the sale of the property to Zinvest was void because the Ravalli County Treasurer failed to comply with § 15-17-123, MCA. Section 15-17-123, MCA, requires the county treasurer to file an affidavit with the county clerk immediately after publishing the notice of the pending tax lien sale. In recognition of its failure to file a contemporaneous affidavit, on June 21, 2013, the County Treasurer recorded with the Clerk and Recorder an Affidavit of Publication—Notice of Tax Sale for Tax Year 2010, in which it attested that a proper newspaper notice of the July 2011 tax lien sale had been published.

¶9 The District Court *sua sponte* converted Hudgins' response to a cross-motion for summary judgment. Following unsuccessful settlement proceedings and a summary judgment hearing, the District Court determined that the County Treasurer had not strictly complied with the applicable statutes based upon its failure to file a timely affidavit of publication of the notice of tax lien sales, as required by § 15-17-123, MCA. The court therefore granted Hudgins' cross-motion for summary judgment and denied Zinvest's, and declared Zinvest's tax deed void.

¶10 Zinvest filed a timely appeal.

## STANDARD OF REVIEW

¶11 We review a district court's grant of summary judgment de novo. If there are no genuine issues of material fact, we determine whether the district court correctly concluded that the moving party is entitled to judgment as a matter of law. We review this legal conclusion for correctness. Additionally, a statutory interpretation is a conclusion of law, which we review to determine whether the district court's interpretation of the law is correct. *Tacke v. Mont. Lakeshore Props., LLC*, 2011 MT 197, ¶ 9, 361 Mont. 390, 260 P.3d 128 (internal citations omitted).

## DISCUSSION

¶12 *Did the District Court err in denying Zinvest's motion for summary judgment and granting Hudgins' cross-motion for summary judgment on the ground that the County Treasurer failed to file an affidavit of publication as required by § 15-17-123, MCA?*

¶13 Zinvest argues on appeal that it strictly complied with all statutory and procedural requirements imposed on it as a purchaser at a tax lien sale. It maintains that the District Court erred in holding it responsible for the failure of the Ravalli County Treasurer to strictly comply with the statutory requirements. Zinvest notes that the purpose of the affidavit required by § 15-17-123, MCA, is to provide prima facie evidence that notice was given and the due process rights of the delinquent taxpayer were not violated. The company maintains that the evidence in the record clearly shows that the County provided due process to the Hudgins, and therefore the "prima facie" evidence provided by the affidavit is unnecessary. It therefore maintains that the tax deed is valid.

¶14 Hudgins maintain that the County Treasurer's failure to file with the Clerk and Recorder's office the affidavit of publication required in § 15-17-123, MCA, deprived Ravalli County of jurisdiction to issue the tax deed. The couple asserts that *Isern v. Summerfield*, 1998 MT 45, 287 Mont. 461, 956 P.2d 28, demands "punctilious compliance" with all tax lien statutory and procedural requirements and failure to achieve such compliance—either by the purchaser or county officials—renders the tax deed void.

¶15 Section 15-17-123, MCA, provides:

(1) Immediately following publication or posting of the notice required in 15-17-122, the county treasurer shall file a copy of the notice with the county clerk. The copy must be accompanied by an affidavit signed by the county treasurer stating:

(a) the name of the newspaper and its address of publication; and

(b) the dates the notice was published.

(2) If no newspaper is published in the county, the affidavit must list the locations and date of the posting required by 15-17-122.

(3) The affidavit filed under subsection (1) or (2) is prima facie evidence of all the facts stated therein.

¶16 It is undisputed that the County Treasurer provided the requisite statutory notice by publication of each tax lien sale from 2009–2011. However, there is no record of a contemporaneously-filed affidavit of publication for any of these sales. As noted above, the Country Treasurer filed an affidavit of publication pertaining to the 2011 sale

in June 2013. Hudgins claim this affidavit is insufficient and that they were deprived of due process by the County's failure to file the required affidavits of publication. However, Hudgins do not contend that they had no notice of Zinvest's interest in, or subsequent purchase of, the property through the tax lien sale process. In fact, they adopted the District Court's statement of the facts of the case including the court's finding that Hudgins had both constructive and actual notice of the proceedings. Moreover, the District Court expressly observed that Hudgins presented no evidence that they ever attempted to redeem the property.

¶17 Hudgins rely heavily on our ruling in *Isern*. In *Isern*, Isern failed to pay his property taxes for several years accruing a debt to Missoula County of approximately $9,400. In late 1995, Hawkinson and Summerfield paid the County the amount due and the County issued a tax deed to the couple. *Isern*, ¶ 4. Isern then attempted to redeem the property but Missoula County refused to accept his check. Isern filed an action in the Fourth Judicial District Court seeking to set aside the tax deed and to quiet title to the property in himself, claiming statutory errors, omissions and deficiencies in the tax deed process. *Isern*, ¶ 5. The District Court denied Isern's motion for summary judgment and he appealed. *Isern*, ¶ 6. We reversed, finding that the Missoula County Treasurer failed to comply with multiple statutory tax sale requirements, many of which involved notice regarding delinquent properties. Most significantly, the County failed to notify Isern of the pending issuance of a tax deed to Hawkinson and Summerfield. Despite having Isern's correct Spokane, Washington, mailing address on file with the County, the County sent the notice to Isern's former Missoula address. *Isern*, ¶ 15. Based upon the numerous and significant statutory violations, we stated "because a property owner's fundamental interests are at stake in tax deed proceedings, such proceedings demand punctilious compliance with all statutory and procedural requirements." *Isern*, ¶ 10. We therefore held that the tax deed to Hawkinson and Summerfield was void. *Isern*, ¶ 21.

¶18 While we agree with the Court's holding in *Isern* based upon the facts of that case, the case at bar is readily distinguishable. With the exception of the affidavit requirement in § 15-17-123, MCA, both Zinvest and the County strictly complied with all statutory tax sale requirements. Unlike Isern, Hudgins resided on the subject property at all times during the proceedings and there was no confusion as to the correct address to which to send notices. Further, Hudgins do not dispute that they received actual and constructive notice of the tax sale

proceedings, and despite such notice, never made any attempt to redeem the property.

¶19 As noted, Zinvest maintains that the purpose of the affidavit required by § 15-17-123, MCA, is to provide "prima facie evidence of all the facts stated therein," which includes the name of the newspaper and the dates that notice of the tax lien sale was published. Section 15-17-123(3), MCA. There is no dispute that the notices were duly and properly published and that Hudgins were accorded full notice and due process of law in the proceedings. Given these facts, the "prima facie" purpose behind the affidavit requirement was—in this case—superfluous. We therefore conclude that the failure to contemporaneously file the affidavit did not render the tax deed void.

¶20 We limit our holding to the facts of the case before us. The purpose behind the tax lien sales statutes is to protect property owners and their rights to due process. Because Hudgins received all protections and due process to which they were entitled and can claim no prejudice resulting from the County Treasurer's failure to file the subject affidavit, we conclude the District Court erred when it granted Hudgins' cross-motion for summary judgment.

## CONCLUSION

¶ 21 Reversed and remanded to the District Court for entry of judgment in favor of Zinvest.

JUSTICES WHEAT, BAKER and SHEA concur.

JUSTICE McKINNON, dissenting.

¶22 I dissent from the Court's decision, which we state is limited "to the facts of the case before us," Opinion, ¶ 20, because I believe it lessens this Court's commitment to the principles of strict construction of tax deed proceedings set forth in *Showell v. Brosten*, 2008 MT 261, ¶ 14, 345 Mont. 108, 189 P.3d 1210; *Isern v. Summerfield*, 1998 MT 45, ¶¶ 10, 20-21, 287 Mont. 461, 956 P.2d 28; and *Tax Lien Services v. Hall*, 277 Mont. 126, 133, 919 P.2d 396, 400 (1996). We made a similar qualification in *Tacke v. Montana Lakeshore Properties, LLC*, 2011 MT 197, 361 Mont. 390, 260 P.3d 128, concluding that the "unique facts" of that case justified a deviation from strict construction of tax lien proceedings. *See Tacke*, ¶ 19 (Nelson, J., specially concurring). Because the tax lien statutes exist to protect property owners and their due process rights, U.S. Const. amend. XIV, § 1; Mont. Const. art. II, § 17, the procedural requirements in tax deed statutes must be strictly observed. *Isern*, ¶ 10.

¶23 I agree with the District Court that the Montana Legislature

enacted § 15-17-123, MCA, to ensure "continuity of notice to the universe of interested persons in tax deed proceedings—including Hudgins," and that a public site must be available in the clerk and recorder's office to research, review, discover, or confirm the publication of notice. Thus, this Court's interpretation of whether Hudgins received due process is misplaced, as the purpose behind the tax deed proceedings—if strictly complied with—will negate any due process concerns. By overlooking the errors and omissions of the Ravalli County Treasurer, this Court neutralizes the Legislature's enactment of § 15-17-123, MCA, and carves out yet another exception to the "strict compliance" rule, confusing what was heretofore a straightforward commitment to strict construction of tax deed proceedings. Exceptions to strict construction will undermine the principles of due process inherent in the tax deed statutes. Furthermore, we addressed the significance of having two distinct offices, the Clerk and the Clerk and Recorder, in *Isern*, ¶¶ 13-16, and rejected an argument that one office's noncompliance with statutory requirements may be overlooked.

¶24 As I believe we are departing, once again, from what was clear precedent and guidance to the trial courts, and given our previous commitment to the principles of strict construction of tax proceedings, I dissent.