STATE ex rel. CITY OF BILLINGS, Relator, v. OSTEN, County Treasurer, Respondent.

(No. 6,931.)

(Submitted November 13, 1931. Decided November 25, 1931.)

[5 Pac. (2d) 562.]

*Mr. George S. Smith,* for Appellant, submitted a brief and argued the cause orally.

*Mr. L. A. Foot,* Attorney General, and *Mr. C. N. Davidson,* Assistant Attorney General, for Respondent, submitted a brief; *Mr. Davidson* argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

This is an appeal from a judgment entered upon an order quashing an alternative writ of mandate, and dismissing the proceeding.

In its application for the writ relator alleged the creation of an improvement district in the City of Billings, in which the lots in question are included, for the purpose of constructing a trunk sanitary sewer, the passage of a resolution assessing and levying upon each lot or parcel of land within the district a special assessment to be paid in twelve annual installments,

beginning with the year 1921; that there were assessed and levied the following amounts against the lots affected by this proceeding: Against those in what we shall call parcel A, a total of $130.92, of which the sum of $10.98 is payable in the year 1931; and against those in what we call parcel B, the sum of $185.39, of which the amount payable in 1931 is $14.64.

Parcel A was sold, for delinquent general taxes levied and special assessments payable in 1925, to Yellowstone county on January 21, 1926, the county receiving a certificate of sale therefor. On April 9, 1926, the county assigned the certificate of sale to P. S. Corkins, who assigned it to Robert N. Jones on December 12, 1930. Thereafter such proceedings were had that a tax deed was issued to Jones by the county treasurer on April 21, 1931, and title has been vested in him ever since.

Parcel B was sold, for delinquent general taxes levied and special assessments payable in 1926, to Yellowstone county on January 21, 1927, the county receiving a certificate of sale therefor; it received a deed on August 4, 1930.

The city has not provided for the collection of taxes by the city treasurer, and that duty has devolved upon the county treasurer, who refuses to make collection of the special assessment alleged to be due in 1931. The city prayed for the issuance of a writ of mandate commanding the county treasurer to collect the special assessments for the year 1931.

If section 2215, Revised Codes 1921, the statute in effect when the tax sales were held, had continued without amendment, admittedly the tax deeds would have cut off all prior tax liens. (*State ex rel. City of Great Falls* v. *Jeffries*, 83 Mont. 111, 270 Pac. 638.) Section 2215 then provided that "the deed conveys to the grantee the absolute title to the lands described therein, as of the date of the expiration of the period for redemption, free of all incumbrances, except the lien for taxes which may have attached subsequent to the sale. * * * *" But it is contended by relator that the provisions of section 2215 were amended by section 9 of Chapter 100, Session Laws of 1929, and respondent does not oppose this

view. The case was presented upon that theory, and we shall proceed upon that assumption. Section 1 of Chapter 100 provides that "the purchaser of property hereafter sold for de-' linquent taxes or his assigns desiring a tax deed thereto may at his option, in addition to all other methods now provided by law," bring an action to obtain from the county treasurer a deed for the property involved. The course to be pursued is prescribed with some particularity.

Section 9 of Chapter 100 provides: "The deed hereafter issued under this or any other law of this state shall convey to the grantee the absolute title to the lands described therein as of the date of the expiration of the period for redemption, free of all encumbrances and clear of any and all claims of said defendants to said action except the lien for taxes which may have attached subsequent to the sale and the lien of any special or local improvement assessments levied against the property payable after the execution of said deed. * * * "

The question for decision is, were the liens based upon special assessments preserved by the terms of section 9 of Chapter 100?

Admitting that the clause "and the lien of any special or local improvement assessments levied against the property payable after the execution of said deed" was inserted in section 9 for the express purpose of obviating the effect of section 2215 as interpreted in the *Jeffries Case*, there can be no doubt that Chapter 100, including section 9, operates prospectively and not retroactively. "No law contained in any of the codes or other statutes of Montana is retroactive unless expressly so declared." (Sec. 3, Rev. Codes 1921; *State ex rel. Mills* v. *Dixon (Educational Bonds Case)*, 68 Mont. 526, 219 Pac. 637.)

The sale of property for taxes is a device to compel the owner to pay his share of the burden of government. If he does not pay within the time allowed, his property will be sold subject to redemption, but with added burdens consisting of penalties, interest and costs. The policy of the state is to collect the taxes, not to divest the owner of the property to which the lien for taxes attaches. The individual bidder may

purchase at tax sale for one of two reasons: he may desire to receive back the money he invests plus a high rate of interest in case the owner redeems the property, or he may desire primarily to acquire the property in case redemption is not made. In either case, upon filing the duplicate certificate of sale with the county clerk (sec. 2197, Rev. Codes 1921), he acquires the lien of the state upon the property which cannot be divested except by payment to him, or to the county treasurer for his use, of the money he has paid with interest; if redemption is not made within the time limited (sec. 2201), he may, upon compliance with the statute, receive a deed for the property. (See section 2209, as amended by Chapter 156, Laws of 1929; and also Chapter 100, supra.)

When the property involved in this proceeding was sold, section 2191 provided that in case there be no purchaser in good faith for the property on the first day it is offered for sale, "then when the property is offered thereafter for sale and there is no purchaser in good faith for the same, the whole amount of the property assessed must be struck off to the county as the purchaser, and the duplicate certificate delivered to the county treasurer and filed by him in his office." (See section 2191, Rev. Codes 1921, as amended, Laws 1923, Chap. 46.)

Section 2207 provides: "At any time after any parcel of land has been bid in by the county as the purchaser thereof for taxes, as provided in section 2191, the same not having been redeemed, the county treasurer shall assign all the right of the county therein, acquired at such sale, to any person who shall pay the amount for which the same was bid in, with interest thereon at the rate of one per cent. per month, and the amount of all subsequent delinquent taxes, penalties, costs, and interest, as provided by law, upon the same from time to time when such tax became delinquent," and prescribes the form of the assignment.

As at the sale, the purchaser may acquire the certificate of sale as an investment, or, in order to get title, he may have to take the title to save his investment.

Title does not vest in the individual purchaser or in the county until the execution and delivery of the deed. Prior to that, he has merely an inchoate or inceptive title; or, to put it another way, the holder of the certificate of sale has a lien which can ripen into title only after the lapse of a definite time and upon compliance with the statutory requisites.

The validity and effect of the tax deed is to be determined by the statutes in force when the sale was made and not by statutes subsequently enacted, for, except as to governmental agencies, the sale of land for delinquent taxes constitutes a contract between the purchaser and the state, the obligation of which cannot be impaired to the disadvantage of the purchaser by subsequent legislation. (37 Cyc. 1452; 26 R. C. L. 434; *Prowant* v. *Smith,* 77 Okl. 257, 188 Pac. 93; *Walker* v. *Ferguson,* 176 Ark. 625, 3 S. W. (2d) 694.)

"The right of property acquired by the purchaser at this sale, and the right of redemption remaining to the owner, must both be governed by the law in force at the time of sale. Neither, in our judgment, could be either abridged or enlarged by subsequent legislation. This is unquestionably so as to the right of the purchaser." (*Merrill* v. *Dearing,* 32 Minn. 479, 21 N. W. 721; and see *Johnson* v. *Taylor,* 150 Cal. 201, 119 Am. St. Rep. 181, 10 L. R. A. (n. s.) 818, 88 Pac. 903.)

Therefore, if Jones had been the purchaser of parcel A at the tax sale, it is clear that he would be entitled to a deed under the provisions of section 2215 as it existed before amendment. Does it matter that he obtained the deed under a certificate of sale issued to the county? Obviously the county did not receive the certificate of sale in virtue of a contractual relation. The issuance of the certificate to the county was by direction of law. But the policy of the state is to avoid the issuance of deeds to the county, for when the title vests in the county the property is no longer subject to taxation, and the public revenue to that extent is curtailed. Hence the law encourages the assignment of certificates of sale which the county has been constrained to receive.

This situation and the policy of the state considered, we hold ██ that one who purchases a certificate of sale from the county occupies the same position legally as if he had purchased at the sale, provided that at the time he takes an assignment of the certificate of sale from the county the law remains the same as it was when the sale was made. A contractual relation came into being when Corkins, Jones' predecessor in interest, purchased the certificate of sale from the county. Jones acquired every right Corkins had. Jones therefore became entitled to all the benefits flowing from the certificate under the law existing when the county's title thereto was acquired by Corkins. (*State ex rel. Davenport* v. *McDonald*, 26 Minn. 145, 1 N. W. 832; *State ex rel. Stieff* v. *Bradshaw*, 39 Fla. 137, 22 South. 296.) We do not overlook the fact that the purchaser obtains only the rights of the county, nor do we overlook the possibility that the title of the county, a governmental agency, may be affected by subsequent legislation; but we shall not in this opinion pass upon questions which we deem unnecessary to this decision.

When Jones received a deed to parcel A, the property was free and clear of all encumbrances against the property existing on the day of the tax sale. (*State ex rel. City of Great Falls* v. *Jeffries*, supra.)

If it be conceded that the rules which apply to parcel A do not apply to parcel B, now owned by the county, we do not see how the county treasurer can collect the special assessment. We do not know of any law which authorizes the county to pay it. Surely it cannot be urged that the county must offer its own property at tax sale to pay the same.

Whether the legislative assembly may pass a law enabling the counties to pay past-due delinquent special assessments in view of section 13 of Article XV of the Constitution need not now be considered. Relator has not shown that the county ██ treasurer can collect the tax—has not shown his failure or refusal to perform an act which the law specially enjoins as a duty resulting from his office. (Sec. 9848, Rev. Codes 1921.) Mandamus issues only to compel the performance of a clear

legal duty. (*State ex rel. Donlan* v. *Board of County Commrs.*, 49 Mont. 517, 143 Pac. 984; *State ex rel. Bankers' Trust Co.* v. *Walker,* 70 Mont. 484, 226 Pac. 894.)

The judgment is affirmed.

ASSOCIATE JUSTICES GALEN, FORD, ANGSTMAN and MATTHEWS concur.