# FILED

March 25 2008

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 06-0770

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2008 MT 100

GARY L. COLLIER,

      Plaintiff and Appellant,

    v.

ART KINCHELOE, as Personal Representative for
the Estate of Violet Jean Kincheloe a/k/a Violet
Kincheloe, Deceased, ART KINCHELOE, and
FIRST SECURITY BANK OF ROUNDUP,

      Defendants, Appellees, and Cross-Appellants.

APPEAL FROM:    District Court of the Sixteenth Judicial District,
In and For the County of Rosebud, Cause No. DV 05-19
Honorable Joe L. Hegel, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Bruce E. Lee, Attorney at Law, Billings, Montana

      For Appellees:

          Michael Dockery, Jared LeFevre; Crowley, Haughey, Hanson, Toole
          &  Dietrich, Billings, Montana (for First Security Bank of Roundup)

          Patrick J. Kelly, Attorney at Law, Miles City, Montana
          (for Art Kincheloe)

                    Submitted on Briefs:  September 6, 2007

                            Decided:  March 25, 2008

Filed:

                     _____
                           Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1 Gary L. Collier filed this action to quiet title to real property located in Rosebud County, Montana. The Sixteenth Judicial District Court, Rosebud County, entered judgment granting fee simple title to the property to the Estate of Violet Jean Kincheloe a/k/a Violet Kincheloe (Kincheloe). Collier appeals and First Security Bank of Roundup cross-appeals. We affirm.

¶2 The dispositive issue is whether the District Court erred in determining Kincheloe holds fee simple title to the disputed property.

BACKGROUND

¶3 This case involves title to the surface of real property in Rosebud County, Montana, described as:

> Township 12 North, Range 31 East, M.P.M.
> Section 32: That part of the NE¼ lying east of the Musselshell River.
> Section 33: E½ and that part of the NW¼ and N½SW¼ lying north and east of the Musselshell River.

Pursuant to Elmer Collier's Last Will and Testament, a life estate in the fee simple title to the surface rights to this property was distributed to Elmer's son Leo Collier in 1966. The remainder interest in the property passed to Leo's children. The mineral rights in the real property are not at issue here.

¶4 Leo failed to pay property taxes for the year 1968 and, as a result, the property was sold to Rosebud County for the payment of taxes in 1969. In January of 1972, the County Treasurer of Rosebud County issued a tax deed to Rosebud County for the property.

2

¶5    On February 8, 1972, Rosebud County executed a quitclaim deed to the real property to Leo and his wife. A creditor later obtained a judgment against Leo and his wife and, during the execution of that judgment, the Rosebud County Sheriff sold the real property at a sheriff's sale. Wendell Kincheloe purchased "all the title, right, estate and interest that [Leo and his wife] had on December 5, 1977." Upon Wendell Kincheloe's death, title to the property transferred to Violet J. Kincheloe, who mortgaged the property to First Security Bank of Roundup.

¶6    Leo died in August of 2003. His son Gary, one of the remaindermen under Elmer's will, filed this action in 2005, seeking to quiet title to the property in the remaindermen. The other remaindermen ratified this action. The defendants—Violet Kincheloe, Art Kincheloe, and First State Bank of Roundup—answered the complaint and counterclaimed, seeking to quiet title in Violet Kincheloe's name. After Violet Kincheloe died, Art Kincheloe, as personal representative of her estate, was substituted for her as a defendant.

¶7    The parties subsequently filed cross-motions for summary judgment under four separate legal theories. The District Court issued a memorandum and order granting summary judgment in favor of the defendants on grounds that Kincheloe had acquired title to the property by adverse possession.

## STANDARDS OF REVIEW

¶8    We review a district court's grant of summary judgment *de novo*, applying the standard from M. R. Civ. P. 56. The moving party must establish the absence of any genuine issues of material fact and entitlement to judgment as a matter of law. We

3

review a district court's conclusions of law to determine whether they are correct. *Baltrusch v. Baltrusch,* 2006 MT 51, ¶ 11, 331 Mont. 281, ¶ 11, 130 P.3d 1267, ¶ 11 (citations omitted). We will affirm a correct result, even if the district court reached the correct result for the wrong reason. *Montana Earth Resources Ltd. Partnership v. North Blaine Estates, Inc*., 1998 MT 254, ¶ 29, 291 Mont. 216, ¶ 29, 967 P.2d 376, ¶ 29 (citation omitted).

## DISCUSSION

**¶9     Did the District Court err in determining that Kincheloe holds fee simple title to the surface of the disputed property?**

¶10     The District Court discussed the various legal theories raised by the parties in relation to their motions for summary judgment. It reasoned in pertinent part that Leo would benefit from his failure to pay the property taxes in 1968 if he and his wife acquired fee simple title—rather than a mere life estate—when they purchased the property from Rosebud County in 1972. Thus, the court determined that, in 1972, Leo and his wife were restored to the life estate Leo held before he lost the property, and the subsequent purchasers' title was similarly limited to a life estate for Leo's life. The District Court also determined, however, that Kincheloe had obtained fee simple title to the property by adverse possession.

¶11     With regard to the life estate issue, Collier contends the District Court correctly determined that Leo and his wife only received Leo's life estate in 1972. Relying on "hundreds of cases"—including *Word v. Moore*, 66 Mont. 550, 214 P. 79 (1923)—he advances the "flat out, well-established rule of law" that people who buy their own

4

property at a tax sale do not receive a new and paramount title, but merely are restored to their former estate. As set forth above, however, Leo did not buy his own property at a tax sale. Rosebud County bought the property at the 1969 tax sale. Rosebud County subsequently acquired a tax deed which granted the county "all the property."

¶12 Collection of property taxes, tax sales of property for unpaid property taxes, redemption, tax deeds and sale of tax deed land are controlled by statute in Montana. The statutes applicable to the tax deed proceedings at issue here are codified in Title 84, Chapter 41, RCM (1947). Current Montana statutes on these subjects are codified in Title 15, Chapters 16, 17 and 18, MCA.

¶13 It is undisputed that, as the owner of a life estate, Leo was responsible for paying the taxes on the property. *See e.g. In re Lindhart's Estate*, 133 Mont. 65, 72, 320 P.2d 357, 362 (1958). He failed to pay those property taxes and the property was sold to Rosebud County at a tax sale in July of 1969. Leo did not redeem the property within the period set forth in the Notice of Application for Tax Deed pursuant to § 84-4151, RCM (1947). As a result, the Rosebud County Treasurer conveyed the property to Rosebud County by tax deed in January of 1972.

¶14 Section 84-4170, RCM (1947), provides that a tax deed

> shall convey to the grantee the absolute title to the lands described therein as of the date of the expiration of the period for redemption, free of all encumbrances and clear of any and all claims of said defendants to said action except the lien for taxes . . . and the lien of any special, local improvement, irrigation and drainage assessments . . . and except when the land is owned by the United States or this state[.]

Pursuant to the statute, the tax deed granted to Rosebud County conveyed, by its terms,

5

all of the property at issue, without a life estate—or any other—restriction. Our jurisprudence regarding tax deeds is of equally long standing.

¶15 In *Rist v. Toole County*, 117 Mont. 426, 159 P.2d 340 (1945), we relied on prior Montana case law and § 84-4170, RCM, in stating

> [a] tax deed is not derivative but "creates a new title in the nature of an independent grant from the sovereignty, extinguishing all former titles and liens not expressly exempted from its operation." It therefore strikes down not only the former owner's fee title, but all encumbrances and incidents thereof, including oil leases and assignments of royalty interests. Like mortgages and other interests dependent on the fee, leases and royalty interests must be accepted subject to that legal limitation and to the circumstances that it may become necessary to see that the taxes upon the fee are paid in order to preserve rights dependent thereon.

*Rist*, 117 Mont. at 442, 159 P.2d at 347 (citations omitted).

¶16 Under § 84-4170, RCM (1947), and *Rist*, Rosebud County's tax deed created a new title extinguishing all former titles and liens not expressly exempted from its operation, including both Leo's former life estate and the remainder interest. In turn, the quitclaim deed from Rosebud County in 1972 conveyed its fee simple title to Leo and his wife. Necessarily, then, when Wendell Kincheloe purchased the real property, he purchased fee simple title by acquiring "all the title, right, estate and interest" held by Leo and his wife.

¶17 Collier argues, however, that because the statutorily-required period between a county's acquisition of property by tax deed and its sale of that land did not pass before Rosebud County sold the property to Leo and his wife, acquisition of the property by quitclaim deed in 1972 by Leo and his wife could not have occurred through a tax deed auction. He surmises that the acquisition "must have been" a preferential repurchase by

6

Leo as the former owner, pursuant to § 84-4190, RCM (1947).

¶18     Nothing in the quitclaim deed indicates Leo and his wife's 1972 purchase was made pursuant to a repurchase right.  Moreover, even if Collier were correct on this point, the result of this case would not change.  As we noted in *Beckman Bros. v. Weir*, 120 Mont. 305, 308, 184 P.2d 347, 348 (1947), "[t]he purchase of tax-acquired property from the county by the former owner is not a 'redemption'. . . and should not be confused with a redemption."  The right of redemption is lost upon the fixing of a date for tax sale— before the issuance of a tax deed.  *Beckman Bros*, 120 Mont. at 309, 184 P.2d at 348.  On the other hand, a former owner's statutory preferential right to repurchase under § 84-4190, RCM (1947), arises only after a tax deed has been issued to the county.  Following the issuance of the tax deed in this case, Rosebud County held fee simple title to the property by virtue of the tax deed.  As a result, the county's quitclaim deed to Leo and his wife conveyed that fee simple title to them.

¶19     We conclude Kincheloe holds fee simple title to the real property at issue.  Therefore, we hold that the District Court reached the correct result and correctly granted summary judgment in favor of the defendants.  Because our holding is dispositive, we need not discuss the other issues raised.

¶20     We affirm the judgment of the District Court.


                                        /S/ KARLA M. GRAY


7

We concur:

/S/ JAMES C. NELSON
/S/ BRIAN MORRIS
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE