FILED

November 24 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0312

DA 15-0312

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 327

RN & DB, LLC,

       Plaintiff and Appellee,

    v.

MARY BARBARA EVANS STEWART,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Eleventh Judicial District,
                In and For the County of Flathead, Cause No. DV 14-030B
                Honorable Robert B. Allison, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

              Mary Barbara Evans Stewart, self-represented, Kalispell, Montana

       For Appellee:

              James M. Ramlow, Ramlow & Rudbach, PLLP, Whitefish, Montana

              Randall S. Ogle, Ogle & Worm, PLLP, Kalispell, Montana

                         Submitted on Briefs:  October 14, 2015
                                 Decided:  November 24, 2015

Filed:

_____

                      Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1    Representing herself in this appeal, Mary Barbara Evans Stewart appeals an order granting summary judgment and a decree quieting title to real property in favor of RN & DB, LLC (RN & DB) entered by the Eleventh Judicial District Court, Flathead County. We restate the issues on appeal as follows:

> 1.  Whether the District Court erred in not applying the statutory homestead exemption to the tax lien sale on Stewart's property.
>
> 2.  Whether the District Court should have considered the Flathead County Tax Assessor's failure to investigate Stewart's complaints regarding irregular tax assessments on Stewart's property.
>
> 3.  Whether the District Court deprived Stewart of due process by denying her request for a hearing.

¶2    We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3    Stewart owned and lived on real property located at 6655 Highway 93 South, Lakeside, in Flathead County, Montana (property). The property also is known as Lots 40, 41, and 42 of the unrecorded plat of Mission View Terrace. On April 27, 2001, Stewart recorded a Declaration of Homestead for the property pursuant to § 70-32-105, MCA.

¶4    Beginning in 2006, Stewart failed to pay real property taxes on the property. As a result, on July 15, 2008, the Flathead County Treasurer (County) held a tax lien sale for the delinquent taxes. There was not a purchaser for the tax lien at the sale, so the County was listed as the purchaser of the tax lien pursuant to § 15-17-214, MCA.

2

¶5 On January 11, 2011, RN & DB paid $5,306.89 to the County Treasurer for the delinquent taxes, penalties, interests, and costs for the year 2007 and thereafter. On that same day, the County Treasurer assigned the County's interest in the tax lien to RN & DB.

¶6 On July 6, 2011, RN & DB mailed a Notice That Tax Deed May be Issued to Stewart via certified mail, return receipt requested, to the address disclosed by records at the office of the County Clerk. RN & DB also published the same Notice in the *Daily Interlake* newspaper.

¶7 Upon recording proof of notice, the County Clerk and Recorder advised RN & DB that it had failed to file proof of notice within 30 days of mailing or publishing the notice as required by statute. In an attempt to start the tax deed application process over, RN & DB then mailed Stewart a second Notice That Tax Deed May be Issued on August 30, 2011. The second notice included an inaccurate amount of tax due and was not published.

¶8 The County issued a tax deed to RN & DB on November 7, 2011. The initial tax deed had an incomplete property description, rendering it defective. The County issued a corrected tax deed on November 28, 2011. RN & DB subsequently filed an action to quiet title to the property. Stewart contested the action on the ground that the tax deed issued to RN & DB was void due to multiple problems with the statutory notice processes. In that action, Stewart was represented by counsel. The court found that RN & DB had failed strictly to comply with the specific statutory requirements for issuance

of a tax deed. As a result, the court held that the County Treasurer was without jurisdiction to issue the tax deed and the tax deed was therefore void *ab initio*. The court dismissed the cause without prejudice on August 22, 2013.

¶9 After continuing to pay the delinquent taxes, RN & DB applied for a tax deed to the property again in late 2013, having paid a total amount of $13,722.69 in taxes, penalties, interest, and costs. This time, Stewart did not contest the tax deed on grounds of problems with the statutory notice process. Stewart did not redeem the property within 60 days of the day she received the Notice That Tax Deed May be Issued. The County issued a tax deed to RN & DB on December 9, 2013. RN & DB recorded the tax deed the following day.

¶10 RN & DB then filed a second action to quiet title to the property. Stewart was personally served with the complaint on January 22, 2014. The District Court entered default judgment against Stewart and a decree of quiet title to the property in favor of RN & DB on February 18, 2014. Several months later, appearing pro se, Stewart moved to vacate the judgment based, in part, on her belief that the notice of the tax deed issuance was from the prior action. The court set aside the entry of default and the default judgment.

¶11 Stewart filed an answer claiming that her property was exempt from execution or forced sale under Montana's homestead laws. RN & DB moved for summary judgment on the ground that there was no forced sale or execution because a tax deed extinguishes a delinquent payer's title and creates a fresh title granted directly by the State.

4

¶12 The District Court granted RN & DB's motion for summary judgment, finding no genuine issues of material fact, and entered a decree quieting title in favor of RN & DB on April 30, 2015. Stewart moved for a stay of judgment pending this appeal. The District Court granted the motion. Stewart appeals the judgment and decree of quiet title.

## STANDARDS OF REVIEW

¶13 We review summary judgment rulings *de novo*, applying the criteria of M. R. Civ. P. 56. *Davis v. State*, 2015 MT 264, ¶ 7, 381 Mont. 59, 357 P.3d 320 (citing *Tin Cup Cnty. Water v. Garden City Plumbing & Heating Inc.*, 2008 MT 434, ¶ 21, 347 Mont. 468, 200 P.3d 60). Summary judgment is appropriate when the moving party demonstrates both the absence of any genuine issues of material fact and entitlement to judgment as a matter of law. M. R. Civ. P. 56(c)(3); *Anderson v. BNSF Ry.*, 2015 MT 240, ¶ 15, 380 Mont. 319, 354 P.3d 1248. If there are no genuine issues of material fact, we review for correctness the district court's conclusion that the moving party is entitled to judgment as a matter of law. *Zinvest, LLC v. Hudgins*, 2014 MT 201, ¶ 11, 376 Mont. 72, 330 P.3d 1135. A statutory interpretation is a conclusion of law, which we review to determine whether the district court's interpretation of the law is correct. *Zinvest*, ¶ 11 (citation omitted).

¶14 We review a district court's decision to deny a hearing on a summary judgment motion for an abuse of discretion. *Miller v. Goetz*, 2014 MT 150, ¶ 9, 375 Mont. 281, 327 P.3d 483. A court abuses its discretion when it acts arbitrarily, without employment of conscientious judgment, or exceeds the bounds of reason resulting in substantial

5

injustice. *Dollar Plus Stores, Inc., v. R-Mont. Assocs., L.P.*, 2009 MT 164, ¶ 15, 350 Mont. 476, 209 P.3d 216 (citation omitted).

## DISCUSSION

¶15 *1. Whether the District Court erred in not applying the statutory homestead exemption to the tax lien sale on Stewart's property.*

¶16 Section 70-32-201, MCA, provides that homestead property generally is exempt from execution or forced sale. Section 70-32-202, MCA, provides three exceptions to the general exemption:

> A homestead is subject to execution or forced sale in satisfaction of judgments obtained:
>
> (1) on debts secured by construction or vendor's liens upon the premises;
>
> (2) on debts secured by mortgages on the premises, executed and acknowledged by the husband and wife or by an unmarried claimant; or
>
> (3) on debts secured by mortgages on the premises, executed and recorded before the declaration of homestead was filed for record.

¶17 The District Court concluded that the homestead exemption provides no protection from the sale of a tax lien. Based on §§ 70-32-201 to -202, MCA, Stewart contends that summary judgment was improper on that question because there are disputed issues of material fact regarding whether the homestead exemption applies. Stewart alleges, "It was *plainly* disputed between the parties as to whether rights of homestead protect against a tax deed execution." Stewart is mistaken that the parties' dispute over whether the homestead exemption applies constitutes a genuine issue of material fact. Application of the homestead exemption is a legal issue, not a factual issue. As such,

6

Stewart has not raised an issue of material fact. In the absence of factual issues, we must determine whether RN & DB was entitled to judgment as a matter of law. *Zinvest*, ¶ 11.

¶18 In concluding that the homestead exemption did not protect Stewart from a tax lien sale, the District Court cited § 15-18-211, MCA. That section provides that the "county treasurer shall grant the purchaser a tax deed for the property" once the redemption period has passed and the property is not redeemed. According to the court, the statutory procedure for issuing a tax deed is not a forced sale or execution in satisfaction of judgment; rather, "it is a grant of deed from the sovereign and therefore not subject to the homestead exemption." The court, relying in part on *Collier v. Kincheloe*, 2008 MT 100, 342 Mont. 314, 180 P.3d 1157, held that a tax deed extinguishes title in the original owner and creates a brand new title with the purchaser now holding fee simple to the property. The District Court also noted, "It makes sense that the sovereign would not grant exemptions for tax debts."

¶19 Stewart argues that because property tax liens are not explicitly excepted from the homestead exemption by § 70-32-202, MCA, the District Court did not have authority to issue a decree quieting title to the property. Stewart claims that, when the County issued the tax deed to RN & DB "*in exchange* for payment of unpaid taxes," it constituted the type of forced sale implicated under § 70-32-201, MCA. Stewart also claims that when RN & DB sought "*execution* upon the tax deed through *execution* of a quiet title," it constituted the type of execution implicated under § 70-32-101, MCA. Stewart reasons

7

that § 15-16-401, MCA, entitled Tax Due as Judgment or Lien, supports her argument on this issue.

¶20 Stewart argues that the District Court erred in applying *Collier* because *Collier* concerned a party who had a life estate instead of a homestead declaration. Stewart posits that there is "no genuine causal relationship" between homestead law and life estate law because a homestead "provides specific and exact exemptions from execution or forced sale," while a life estate "provides no immunity under law to execution upon the property."

¶21 RN & DB supports the District Court's observation that "it makes sense" not to grant exemptions for tax debts, asserting that the purpose of tax lien statutes is to provide for a reliable method of collecting property taxes. RN & DB argues that the Legislature could not have intended to allow property owners "to opt out of the property tax system simply by filing homestead claims." RN & DB emphasizes that nothing in the homestead statutes' legislative history mentions an intent to abrogate the enforcement of property tax liens. RN & DB also points out that nothing in the tax lien statutes' legislative history suggests an intent to exempt homestead property from tax liens.

¶22 Title 15, Chapters 16 through 18, of the Montana Code set forth Montana's property tax lien and tax deed enforcement procedures. This Court has held that the statutory procedures for the issuance of a tax deed require strict technical compliance. *Showell v. Brosten*, 2008 MT 261, ¶ 14, 345 Mont. 108, 189 P.3d 1210 (citation omitted). Section 15-16-403, MCA, provides that "every tax due upon real property is a lien

8

against the property assessed . . . ." A "lien" is a charge imposed in some mode other than by a transfer in trust by which it is made security for the performance of an act. Section 71-3-101(2), MCA. A property tax lien is "a lien acquired by the payment at a tax lien sale of all outstanding delinquent taxes, including penalties, interest, and costs." Section 15-17-121(4), MCA. A tax lien sale, with respect to real property and improvements, occurs when the county treasurer offers the sale of a property tax lien representing delinquent taxes, including penalties, interest, and costs. Section 15-17-121(7)(a), MCA.

¶23 A person purchases a tax lien by paying the delinquent taxes, together with penalties, interest, and costs. Section 15-17-121(5), MCA. If no person purchases the tax lien on the first day of the tax lien sale, the county is considered to be the purchaser and the tax lien sale certificate is assigned to the county treasurer. Section 15-17-214, MCA. Where the county is the purchaser, the tax lien sale certificate "must be assigned by the county treasurer to any person who, after providing proof of mail notice to the person to whom the property was assessed . . . pays to the county the amount of delinquent taxes, including penalties, interest, and costs, accruing from the date of delinquency." Section 15-17-323, MCA.

¶24 Sections 15-18-111(1), -211, MCA, allow the holder of a tax lien sale certificate to apply for a tax deed to the property after a redemption period of 36 months from the sale has elapsed and after giving at least 60 days' notice to the owner and other interested

9

persons. Section 15-18-212, MCA, requires that the purchaser or assignee of a tax lien

sale certificate give notice as follows:

> (1) Not more than 60 days prior to and not more than 60 days following the expiration of the redemption period provided in 15-18-111, a notice must be given as follows:
>
> .  .  .
>
> (b) for each property for which there has been issued a tax lien sale certificate to a purchaser other than the county or for which an assignment has been made, the purchaser or assignee, as appropriate, shall notify all persons considered interested parties in the property, if any, that a tax deed will be issued to the purchaser or assignee unless the property tax lien is redeemed prior to the expiration date of the redemption period.
>
> .  .  .
>
> (4)(a) The notice required under subsections (1) and (2) must be made by certified mail, return receipt requested, to each interested party and the current occupant, if any, of the property . . . .

Section 15-18-212(1)(b), (4)(a), MCA.

¶25    If a tax lien is not redeemed in the time allowed, "the county treasurer shall grant

the purchaser a tax deed for the property." Section 15-18-211, MCA. Subject to only a

few specific exceptions that do not apply here, a tax deed conveys to the grantee

"absolute title to the property described in the deed as of the date of expiration of the

redemption period, free and clear of all liens and encumbrances . . . ." Section 15-18-214,

MCA.

¶26    In a quiet title action, a tax deed purchaser may obtain an order from the court

directed to the "true owner"—the person who owns the property; has an interest in or lien

upon the property; has a right to redeem the property; or has rights hostile to the tax title.

Section 15-18-411(1), MCA. Stewart is the "true owner" of the property in this case.

10

The court order may command the true owner to deposit with the court for the use of the purchaser:

> (A) the amount of all taxes, interest, penalties, and costs that would have accrued if the property had been regularly and legally assessed and taxed as the property of the true owner and was about to be redeemed by the true owner; and
>
> (B) the amount of all sums reasonably paid by the purchaser following the order and after 3 years from the date of the tax lien sale to preserve the property or to make improvements on the property while in the purchaser's possession, as the total amount of the taxes, interest, penalties, costs, and improvements is alleged by the plaintiff and as must appear in the order; or
>
>> (ii) show cause on a date to be fixed in the order, not exceeding 30 days from the date of the order, why the payment should not be made.

Section 15-18-411(1)(c)(i), (ii), MCA. The deposit described above is not required of a person found to be indigent by the court following an examination into the matter by the court and upon the request of a true owner claiming to be indigent. Section 15-18-411(1)(d), MCA. If the court does not find that the true owner is indigent, or if the true owner fails to pay the deposit within the time fixed by the court, the true owner is considered to have waived any defects in the tax proceedings and any right of redemption. Section 15-18-412(2)(a), MCA. In that case, "the true owner has no claim of any kind against the state or purchaser and a decree must be entered in the action quieting title of the purchaser as against the true owner." Section 15-18-412(2)(a), MCA.

¶27 Tax deed proceedings require strict compliance with statutory requirements because they implicate an owner's fundamental interests. *Hansen Trust v. Ward*, 2015 MT 131, ¶ 26, 379 Mont. 161, 349 P.3d 500. In *Hansen Trust*, although the property at

11

issue was not homestead property, we recognized the power of the tax deed statutes by stating that if a purchaser strictly follows the statutory requirements, an "owner risks losing his or her real property for the failure to pay the property taxes." *Hansen Trust*, ¶ 26. It is undisputed that in this action, RN & DB strictly complied with the statutory requirements. Stewart's reliance on § 15-16-401, MCA, to argue that a tax deed has the effect of a judgment or execution, is misplaced; that section applies to personal property, not to real property. Section 15-16-401, MCA, in pertinent part, provides that "every tax has the effect of a judgment against the person, and every lien created by this title has the force and effect of an execution duly levied against all *personal property* in the possession of the person assessed from and after the date the assessment is made." (Emphasis added.)

¶28 In contrast, a tax imposed on real property and unpaid when due becomes a lien against the property. Section 15-16-403, MCA. The statutes provide for the sale of a tax lien, not the sale of the property itself. Sections 15-17-121(7)(a), -212, MCA. *Compare* § 15-17-121(7)(a), MCA (with respect to real property, a tax lien sale is "the offering for sale by the county treasurer of a property tax lien representing delinquent taxes, including penalties, interests, and costs") *with* § 15-17-121(7)(b), MCA (with respect to personal property, a tax lien sale is "the offering for sale by the county treasurer of the personal property on which the taxes are delinquent or other personal property on which the delinquent taxes are a lien"). With respect to real property, until the tax deed is issued, the tax sale purchaser has neither legal nor equitable title but merely a lien against the

12

property, which ripens into title through the statutory process. *Higgins v. Mont. Hotel Corp.*, 181 Mont. 149, 153, 592 P.2d 930, 933 (1979); *State ex rel. City of Billings v. Osten,* 91 Mont. 76, 81, 5 P.2d 562, 565 (1931). Present title remains in the former owner subject to the lien or encumbrance of the purchaser as security for the money paid at the sale. *State ex rel. Tillman v. Dist. Ct.*, 101 Mont. 176, 182-83, 53 P.2d 107, 110 (1936). "Until the tax deed is issued, the tax sale procedure is essentially nothing more than a tax collection device." 5-39 Richard R. Powell, *Powell on Real Property*, § 39.04, 39-63 (Michael Allan Wolf ed., 2015).

¶29 The owner is given notice and has the opportunity to redeem the lien at multiple steps throughout the process. Sections 15-17-122, 15-18-111, -212, -411, -412, MCA. At the end of the process, if the property tax lien is not redeemed in the manner prescribed by the statutes or in the time allowed by law, the purchaser of the lien acquires the property by tax deed, § 15-18-211, MCA, imposing "the ultimate sanction of losing title to the property." Powell, *supra*, at 39-64. It is undisputed that Stewart did not redeem the lien in the manner or time allowed by law: she did not prevent the tax lien sale by paying the delinquent taxes, including penalties, interest, and costs prior to the sale; she did not redeem the lien within 60 days—or at any time thereafter—following the Notice That Tax Deed May be Issued; and she neither deposited funds with the court nor requested during the quiet title action that the court waive the deposit requirement on the ground of indigence. As such, Stewart is considered to have waived any defects in the tax proceedings and any right of redemption. Section 15-18-412(2)(a), MCA.

13

¶30     We analyzed the effect of a tax deed on former titles to property in *Collier*.  In *Collier*, a life estate holder failed to pay his property taxes and Rosebud County acquired a tax deed to the property. This Court held that Rosebud County's title was complete and eliminated the remainder interests held by the life estate holder's children.  We held that the "tax deed created a new title, extinguishing all former titles and liens not expressly exempted from its operation . . . ." *Collier*, ¶ 16.  *Accord McDonald v. Grassle*, 228 Mont. 25, 30, 740 P.2d 1122, 1125 (1987) (stating, "a tax deed is not derivative but creates a new title in the nature of an independent grant from the sovereign, extinguishing all former titles and liens not expressly exempted from its operation").  Here, Stewart similarly failed to pay property taxes and the County acquired a tax lien on her property. The tax lien sale certificate did not grant title to the property either to the County or to RN & DB; as such, there was no sale of the property at that time.  Like in *Collier*, where Rosebud County's acquisition of a tax deed to the property created a new title and "extinguished all former titles" including remainder interests, when Stewart failed to redeem the property and when RN & DB obtained a tax deed to the property, the tax deed conveyed absolute title to it—free and clear of all liens and encumbrances—and extinguished all former titles, including Stewart's homestead claim.  *Collier*, ¶ 16; § 15-18-214, MCA.

¶31     Based on the foregoing discussion, we conclude that the homestead exemption statutes set forth in §§ 70-30-201 to -202, MCA, do not apply to property tax lien or property tax deed sales.  A majority of jurisdictions agree with our conclusion.  40 Am.

14

Jur. 2d Homestead § 91 (2015) (stating, "In most jurisdictions, liability of homestead property for taxes does not differ from that of other property and the state or municipality can proceed against it as though there were no exemption law in existence."); *Morrison v. Barham*, 184 Cal. App. 2d 267, 272 (Cal. Dist. Ct. App. 1960) (holding that the general homestead exemption "may not be invoked to defeat claims against the holder for taxes and assessments against the homestead property").

¶32   A tax is "an enforced contribution from the people" for the purpose of raising "the necessary revenue for the support of the government and the consequent security of the people in the possession of their property." *State ex rel. Tillman*, 101 Mont. at 181, 53 P.2d at 110.   "Failure to pay taxes is a serious breach of an individual's social obligations.   Public policy requirements for prompt payment of taxes assessed against property give rise to drastic measures to enforce collection of taxes that are delinquent." Powell, *supra*, at 39-37.   Through the Legislature's enactment of property tax lien laws, it has established the policy of the state "to collect the taxes, not to divest the owner of the property to which the lien for taxes attaches."   *State ex rel. Billings*, 91 Mont. at 79, 5 P.2d at 564.   "Yet, if the tax is not paid promptly, the taxing authority may enforce its lien by a legal taking of the property or by sale of the property.   Clearly the need for the individual to pay its obligations is strong, so the remedy, if such obligations are not paid, is powerful." Powell, *supra*, at 39-37.   Montana law reflects this principle:

> The sale of property for taxes is a device to compel the owner to pay his share of the burden of government. If he does not pay within the time allowed, his property will be sold subject to redemption, but with added burdens consisting of penalties, interest and costs.

15

*State ex rel. Billings*, 91 Mont. at 79, 5 P.2d at 564. The effect of these statutes may seem harsh when applied, as here, to deprive a homesteader of the full value of her property over the non-payment of a relatively small amount of tax liability. In a tax deed case, however, "a citizen's right to own property is challenged by the government and the assignee of a tax sale certificate, almost always for a payment by the assignee to the government of far less than the property's full value." *Isern v. Summerfield*, 1998 MT 45, ¶ 9, 287 Mont. 461, 956 P.2d 28. By the same token, "[p]ayment of the underlying tax delinquency terminates the lien as well as sale of the property in a tax lien enforcement action." Powell, *supra,* at 39-42.

¶33 The imposition of taxes and the administration of tax deeds are exclusively creatures of statute. Mont. Const. art. VIII, § 3. The Legislature has crafted a comprehensive scheme to address a property owner's non-payment of taxes. It is the Court's function to apply those statutes as written. Section 1-2-101, MCA. Stewart's interpretation would insulate a homesteader from her obligation to pay taxes on the property, a conclusion that does not find support in the statutes. The record in this case demonstrates that county officials and the court gave Stewart all the protections that the law affords, including rejecting defective notice, setting aside the first faulty tax deed, and withdrawing issuance of default judgment against Stewart. Because the homestead exemptions do not apply to property tax lien sales, the District Court did not err in granting summary judgment to RN & DB on this issue.

¶34    *2. Whether the District Court should have considered the Flathead County Tax Assessor's failure to investigate Stewart's complaints regarding irregular tax assessments on Stewart's property.*

¶35    Stewart claims that RN & DB made erroneous reports to the County Tax Assessor's Office resulting in "an exorbitant increase" in her property taxes. Stewart contends that in or around May 2013, she reported these alleged "irregular" assessments to the County but that the Tax Assessor's Office "disregarded her request." Stewart states that she reported her assessment dispute to the County Tax Assessor's Office, rather than to the Montana Department of Revenue, because the taxes in dispute were issued by the County. Stewart argues that the County should not have issued a tax deed "while the irregular assessment was under contest."

¶36    Section 15-7-101, MCA, establishes that it is the Department of Revenue's duty to appraise "all taxable city and town lots" and "all taxable rural and urban improvements." Section 15-7-101(1)(b)-(c), MCA. Property assessment notices are sent to the owner of real property whenever there is a re-appraisal or change in ownership, classification, or value of property. Sections 15-7-102, -138, MCA. If an owner is dissatisfied with the appraisal as it reflects the market value of the property, "the owner may request an assessment review by submitting an objection on written or electronic forms provided by the department for that purpose" within 30 days after receipt of the notice of appraisal and classification. Section 15-7-102(3)(a), MCA. The county tax appeal board may not reduce the valuation of property unless the taxpayer makes a written application for reduction and submits it for filing with the county clerk and recorder. Section 15-15-102,

17

MCA. The county treasurer may not sell the property or a property tax lien, if, prior to the tax lien sale, the county treasurer discovers that the property on which the taxes are delinquent has been irregularly assessed. Section 15-17-124, MCA.

¶37 RN & DB contends that Stewart's arguments on the value of the tax assessments cannot be the basis for denying the validity of the tax lien and tax deed because she "fail[ed] to follow the statutory and administrative procedure for objecting to appraisals and property classifications." RN & DB further contends that § 15-17-124, MCA, does not apply to Stewart's argument because she objected to the assessment of her property taxes sometime in May 2013 and the tax lien sale occurred in July 2008. Therefore, according to RN & DB, the County Treasurer would not have discovered any irregularities in the assessment "prior to the tax lien sale."

¶38 The District Court concluded that Stewart had not properly reported irregular tax assessments. The court relied on the affidavit of Holly Dale, Lead Property Valuation Specialist for the Office of the Montana Department of Revenue, who testified that the assessments for the property were in accordance with Montana law and with other tax assessment notices for all other property in the County and in the State of Montana. Dale testified that Stewart "has never filed a request for informal review or an appeal on the property . . . ."

¶39 Based on our review of the record, we conclude that Stewart failed to object timely or properly to the tax assessment on her property. There is no evidence that Stewart submitted an objection on written or electronic forms provided by the

18

Department of Revenue within 30 days after receipt of the notice of appraisal pursuant to § 15-7-102(3), MCA. There is no evidence that Stewart made and filed a written application for reduction in valuation with the county clerk and recorder pursuant to § 15-15-102, MCA. Stewart did not make her objection "prior to the tax lien sale" pursuant to § 15-17-124, MCA. Also, as noted above, Stewart did not make the required deposit or seek exemption from the deposit requirement once RN & DB filed the quiet title action; under § 15-18-412(2)(a), MCA, she is deemed to have waived any defects in the proceedings. Therefore, her claims now are barred.

¶40 *3. Whether the District Court deprived Stewart of due process by denying her request for a hearing.*

¶41 Stewart argues that the District Court deprived her of due process when it "deliberately disregarded" her request for a summary judgment hearing. Stewart claims that she made a specific request for a hearing on grounds that the County Tax Assessor's Office would not voluntarily submit an affidavit regarding Stewart's alleged reports disputing the property's tax assessment. Stewart claims that subpoenaing the County Tax Assessor's Office and holding a hearing was the "only means" by which to obtain testimony about Stewart's reported dispute and to "counter" Holly Dale's affidavit. Stewart contends that, upon request to the District Court, she was entitled to a hearing under M. R. Civ. P. 56(c)(2).

¶42 RN & DB argues that the District Court did not deny Stewart's right to due process because 1) Stewart failed to comply with Rule 56(c)(2) hearing request requirements and 2) because the testimony Stewart sought to introduce "could not have

19

affected the validity of the County's tax lien purchase, its subsequent assignment to [RN & DB], or the tax deed issued to [RN & DB]." RN & DB argues that Stewart's hearing request was untimely because she failed to follow the District Court's specific instructions—requiring parties to include a proposed Order and self-addressed, stamped envelope—for making a hearing request. RN & DB also points out that Rule 56 "does not authorize live testimony" and argues that the most favorable testimony the County Tax assessor could have offered "would be the same as what Exhibit B to [Stewart's] Brief avers: That she appeared at [the County Tax Assessor's] office in May 2013 to complain of some 'fees assigned to her tax bill.'"

¶43 Rule 56(c)(2)(A) of the Montana Rules of Civil Procedure provides that "the right to hearing is waived unless a party requests a hearing within 14 days after the time for filing a reply brief has expired."[1] The purpose of a hearing is for the district court to consider "not so much legal arguments, but rather whether there exists genuine issues of material fact." *Cole v. Flathead Cnty.*, 236 Mont. 412, 418, 771 P.2d 97, 101 (1989).

¶44 A district court may grant a motion for summary judgment without first holding a hearing. *Chapman v. Maxwell*, 2014 MT 35, ¶ 11, 374 Mont. 12, 322 P.3d 1029 (citing *SVKV L.L.C. v. Harding*, 2006 MT 297, ¶ 37, 334 Mont. 395, 148 P.3d 584). We have held that "there may be an occasion where the movant is so 'clearly entitled' as a matter of law to summary judgment that the district court may dispense with the need for a hearing." *Richards v. Cnty. of Missoula*, 2009 MT 453, ¶ 17, 354 Mont. 334, 223 P.3d

---

[1] Although we have decided only a few cases interpreting M. R. Civ. P. 56(c) since this Court amended the rule in 2011, much of the case law decided prior to 2011 is helpful in interpreting the revised Rule.

878 (citing *Cole*, 236 Mont. at 419, 771 P.2d at 101). Thus, we will not put a district court in error for failing to hold a summary judgment hearing if the hearing testimony would not raise any issue of material fact. *Richards*, ¶¶ 25-26 (holding that a summary judgment hearing was not necessary and "would not have added anything to the proceedings" because defendant's "one lone memorandum" would not raise an issue of material fact); *Dollar Plus*, ¶ 39 (holding that the district court did not abuse its discretion in granting summary judgment without first holding a hearing because defendant gave "no indication of what evidence it would have presented at the hearing that would have helped it establish a genuine issue of material fact").

¶45 RN & DB filed its motion and brief for summary judgment on December 18, 2014. On December 22, 2014, the District Court ordered a briefing schedule, requiring briefs and affidavits from Stewart by January 12, 2015, and reply briefs and affidavits by RN & DB by January 27, 2015. Stewart filed a response brief and affidavit on January 12, 2015, objecting to the summary judgment motion and requesting a hearing.

¶46 Although we agree with Stewart that she did not waive her right to request a hearing, we conclude that the District Court did not abuse its discretion in denying her request because there was "no indication that the evidence [Stewart] would have presented at the hearing would have helped [her] establish a genuine issue of material fact." *Dollar Plus*, ¶ 39. Stewart claims that testimony from the County Tax Assessor's Office would have raised an issue of material fact by showing that she had disputed the irregular assessments to that office. But, even if Stewart's factual assertion is true, the

most the County Tax Assessor's Office could have offered would be that she informally disputed the taxes to that office in or around May 2013. Such testimony "would not have added anything" as to the validity of the County's tax lien purchase, its subsequent assignment to RN & DB, or the tax deed issued to RN & DB in light of Stewart's failures to comply with the statutory processes discussed above. *Richards*, ¶ 26.

¶47 The testimony Stewart sought to introduce raised no genuine issue of material fact and RN & DB was "clearly entitled" to judgment as a matter of law. *Richards*, ¶ 17 (citing *Cole,* 236 Mont. at 419, 771 P.2d at 101). Accordingly, the District Court did not abuse its discretion in granting summary judgment without holding a hearing.

## CONCLUSION

¶48 For the foregoing reasons, the District Court's judgment and decree of quiet title are affirmed.

/S/ BETH BAKER

We concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ JIM RICE

22